David J.P. Kaloyanides SBN 160368
E: djpkaplc@me.com
DAVID J.P. KALOYANIDES
A PROFESSIONAL LAW CORPORATION
15338 Central Avenue
Chino, CA 91710
T: (213) 623-8120/F: (213) 402-6292

Andrew L. Seidel  (Pro Hac Vice)
Rebecca Markert (Pro Hac Vice)
E: aseidel@ffrf.org/rmarkert@ffrf.org
Freedom From Religion Foundation, Inc.
PO Box 750
Madison, WI 53701
T: (608) 256-8900
Attorney for Plaintiffs
Freedom From Religion Foundation, Inc.,
Michael Anderson, Larry Maldonado, and
Does 1 through 20, inclusive

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., MICHAEL ANDERSON, LARRY MALDONADO, and DOES 1 through 20, inclusive,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CHINO VALLEY UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, and CHINO VALLEY UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION BOARD MEMBERS JAMES NA, SYLVIA OROZCO, CHARLES DICKIE, ANDREW CRUZ, AND IRENE HERNANDEZ-BLAIR in their official representative capacities,<br><br>        Defendants. | Case No.: 5:14-CV-02336 JGB (DTBx)<br><br>FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES |

_____1_____
FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

# FIRST AMENDED COMPLAINT

## Nature of the Claims

1. The central question in this case is about the constitutionality of prayer at public school board meetings.   The answer will affect more than 32,000 public school students.

2. The Chino Valley School Board (hereinafter the "Board") begins each meeting with a prayer.  Indeed the meetings resemble a church service more than a school board meeting, complete with Bible readings by the Board members, Bible quotations by Board members, and other statements by Board members promoting the Christian religion. Plaintiffs, who have personally endured these religious impositions and who have an interest in the administration of the schools, bring this suit to stop those prayers and other conduct and recover damages.

3. Underlying this case are substantive legal issues under the United States Constitution and the California Constitution.  Courts have consistently held that organized prayer in public schools, at public school events, and in public school contexts is unconstitutional.  But courts have allowed state legislatures and city councils to open their meetings with prayer.  Does the Establishment Clause of the First Amendment, which separates state and church, prohibit prayer at public school board meetings as the Third and Sixth Circuit (the only circuits to decide the issue) have found?

4. This case raises the same issue regarding Defendants' conduct under the California Constitution under the No Preference and Establishment Clauses and under California Civil Code Section 52.1.

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

5.  We believe Defendants' conduct violates both the United States and California Constitutions and deprives Plaintiffs under both. Accordingly, Plaintiffs ask this Court to grant injunctive and declaratory relief, nominal damages to redress the plaintiffs' injury, and reasonable attorney's fees and costs.

**Jurisdiction and Venue**

6.  This case arises under the First Amendment to the Constitution of the United States and presents a federal question within this court's jurisdiction pursuant to 28 U.S.C. § 1331.

7.  This is an action to remedy deprivations, actual and imminent, under color of law, of individual rights secured to Plaintiffs by 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the Constitution. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1343a(3) and (4). The Court has jurisdiction to award costs and reasonable fees to prevailing plaintiffs under 42 U.S.C. § 1988.

8.  This Court has supplemental jurisdiction to hear the related claims under the California Constitution arising from the same facts pursuant to 28 U.S.C. § 1367.

9.  This is an action for a declaratory judgment, pursuant to 28 U.S.C. § 2201, and this court has the authority to provide injunctive relief under 28 U.S.C. §1343 and Rule 65 of the Federal Rules of Civil Procedure.

10. The Court also has jurisdiction under 42 U.S.C. § 1983.

11. Venue is proper under 28 U.S.C. § 1391 in that the events giving rise to Plaintiffs' claims occurred within this judicial district.

**Parties**

12. Plaintiff Freedom From Religion Foundation (FFRF) is a Wisconsin non-stock corporation with its principal office in Madison, Wisconsin. As a national non-

3

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

1  profit educational charity under IRS Code 501(c)(3), FFRF works to defend the

2  constitutional principle of separation between church and state, as well as to educate

3  the public about the views of non-theists.  FFRF represents over 3,300 members in

4  California and more than 21,500 nationwide.  FFRF members oppose government

5  endorsements of, and entanglements with religion and violations of the Establishment

6  Clause of the First Amendment and the Equal Protection Clause of the Fourteenth

7  Amendment to the U.S. Constitution.  Plaintiffs Anderson, Does 1 through 3, and Does

8  5 through 20 are members of FFRF.

9          13. Other FFRF members who are local, but who do not have standing, have

10  expressed their support for FFRF's lawsuit and, though unable to act as plaintiffs, are

11  willing to be named. This includes Paulette Hawkins, Lisa Greathouse, Ryan Quinn,

12  Colin Campbell and James F. Thompson.

13          14. Plaintiff Michael Anderson is the parent of children who attend school

14  within the Chino Valley Unified School District (CVUSD). Mr. Anderson has attended

15  meetings of the defendant School Board, he has encountered prayers, Bible readings

16  and quotations by Board members, along with other statements by Board members

17  promoting the Christian religion. He intends to attend future board meetings.

18          15. Doe 1 is a minor and brings this action by and through his/her guardian

19  Michael Anderson. Doe 1 is an 8th grade student in the Chino Valley Unified School

20  District. Doe 1 has attended school board meetings and been subjected to the prayers,

21  Bible readings and quotations by Board members, and other statements by Board

22  members promoting the Christian religion. Doe 1 intends to attend future board

23  meetings.

24

25                                    4
     FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

26

16. Doe 2 is a minor and brings this action by and through his/her guardian Michael Anderson. Doe 2 is an 11th grade student in the Chino Valley Unified School District. Doe 2 has attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, and other statements by Board members promoting the Christian religion. Doe 2 intends to attend future board meetings.

17. Doe 3 is the parent of two minors who are students in the Chino Valley Unified School District. Doe 3 has attended school board meetings and has been subject to the prayers, Bible readings and quotations by Board members, and other statements by Board members promoting the Christian religion. Doe 3 intends to attend future board meetings.

18. Plaintiff Larry Maldonado is a man of the Christian faith and has attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, along with other statements by Board members promoting their version of the Christian religion.  Mr. Maldonado is the parent of a student who attends school within the Chino Valley Unified School District. Within the last year, Mr. Maldonado has endured at least five (5) Board prayers and intends to go to future board meetings.  Mr. Maldonado believes he as a parent, not the defendant School Board, should educate his child concerning religion and religious matters. Mr. Maldonado disagrees with the defendant School Board's conduct and specifically the defendant School Board's prayer policy. Mr. Maldonado intends to attend future board meetings.

19. Doe 4 is a minor, and brings this action by and through his/her guardian, Larry Maldonado. Doe 4 is a 10th grade student within the CVUSD. Doe 4 has

5

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

1    attended school board meetings and been subjected to the prayers, Bible readings and

2    quotations by Board members, and other statements by Board members promoting the

3    Christian religion.

4        20. Plaintiff Doe 5, a minor, brings this action by and through his/her parent,

5    Doe 6. Doe 5 is a student within the Chino Valley Unified School District.  Doe 5 has

6    attended school board meetings and been subjected to the prayers, Bible readings and

7    quotations by Board members, and other statements by Board members promoting the

8    Christian religion.  Doe 5 has endured at least three Board prayers in the last twelve

9    months and intends to go to future board meetings.

10       21. Plaintiff Doe 6 is Doe 5's parent.

11       22. Doe 6 has attended school board meetings and been subjected to the

12   prayers, Bible readings and quotations by Board members, along with other statements

13   by Board members promoting the Christian religion.  Within the last year, Doe 6 has

14   endured at least three Board prayers and intends to go to future board meetings.

15       23. Plaintiff Doe 7 is a CVUSD employee.  Doe 7 has attended meetings and

16   been subjected to these prayers, Bible readings and quotations by Board members, and

17   other statements by Board members promoting the Christian religion, as a result of

18   being employed by the public school district. Doe 7 intends to go to future board

19   meetings.

20       24. Plaintiff Doe 8 is a CVUSD employee and has been for more than fifteen

21   years.  Doe 8 has attended meetings and been subjected to these prayers, Bible

22   readings and quotations by Board members, along with other statements by Board

23   members promoting the Christian religion, as a result of being employed by the public

24   school district.  Doe 8 intends to go to future board meetings.

25   
26                      6

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

25. Does 7 and 8 have attended multiple meetings each year of their employment and been subjected to prayers at those meetings.  Does 7 and 8 fear retribution from the Board, many of whom are unabashedly attempting to inject religion in CVUSD.

26. Plaintiff Doe 9, a minor, brings this action by and through his/her parents Does 11 and 12. Doe 9 is a six-year old student in CVUSD.  Doe 9 has attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, and other statements by Board members promoting the Christian religion.

27. Plaintiff Doe 10, a minor, brings this action by and through his/her parents Does 11 and 12. Doe 10 is a nine-year old student in CVUSD.  Doe 10 has attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, and other statements by Board members promoting the Christian religion.

28. Plaintiffs Does 11 and 12 are the parents of Does 9 and 10.

29. Plaintiffs Does 11 and 12, are members of FFRF, have attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, along with other statements by Board members promoting the Christian religion. Does 11 and 12 intend to go to future board meetings.

30. Plaintiff Doe 13 is a CVUSD employee. Doe 13 has attended meetings and been subjected to these prayers, Bible readings and quotations by Board members, and other statements by Board members promoting the Christian religion, as a result of being employed by the public school district.  Doe 13 intends to go to future board meetings.

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

31. Plaintiff Doe 14, a minor, brings this action by and through his/her parent Doe 15. Doe 14 is a student in CVUSD.  Doe 14 has attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, and other statements by Board members promoting the Christian religion.

32. Plaintiff Doe 15 is the parent of Doe 14.

33. Plaintiff Doe 15 has attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, along with other statements by Board members promoting the Christian religion. Doe 15 intends to go to future board meetings.

34. Plaintiff Doe 16, a minor, brings this action by and through his/her parent Doe 18. Doe 16 is a student in CVUSD.  Doe 16 has attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, and other statements by Board members promoting the Christian religion.

35. Plaintiff Doe 17, a minor, brings this action by and through his/her parent Doe 18. Doe 17 is a student in CVUSD.  Doe 17 has attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, and other statements by Board members promoting the Christian religion.

36. Plaintiff Doe 18 is the parent of Doe 16 and Doe 17.

37. Plaintiff Doe 18 has attended school board meetings and been subjected to the prayers, Bible readings and quotations by Board members, along with other statements by Board members promoting the Christian religion. Doe 18 intends to go to future board meetings.

38. Plaintiff Doe 19, a minor, brings this action by and through his/her parent Doe 20. Doe 19 is a student in the CVUSD.  Doe 19 has attended school board

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

meetings and been subjected to the prayers, Bible readings and quotations by Board members, and other statements by Board members promoting the Christian religion.

39. Plaintiff Doe 20 is the parent of Doe 19.

40. Plaintiff Doe 20 is a former CVUSD employee and has encountered prayers, Bible readings and quotations by Board members, along with other statements by Board members promoting the Christian religion. Doe 20 intends to go to future board meetings.

41. Defendant Chino Valley Unified School District Board of Education (Board) is the governing body responsible for operating, controlling, and supervising all public schools within the Chino Valley Unified School District. Under California Education Code § 35162 "the district is designated the governing board [and] may sue and be sued, and hold and convey property for the use and benefit of the school district."

42. Defendants Chino Valley Unified School District Board members James Na, Sylvia Orozco, Charles Dickie, Andrew Cruz, and Irene Hernandez-Blair are sued in their official capacities as board members. They are responsible for the administration and management of the schools in Chino Valley Unified School District.

**Facts: School Board Meetings**

43. The Board is an integral part of the public school system. "The control of the Chino Valley Unified School District shall be vested in the Board…" *See* Board Bylaw 9000 (a).

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

1    44. The purpose of the Board is to promote and support the public school

2    system.

3    45. The Board sets educational policy, adopts courses of study, appoints or

4    hires personnel, proscribes rules and regulations for the management of schools,

5    evaluates schools within the District, enforces school attendance, enforces student

6    discipline such as suspension and expulsion, and purchases textbooks and other

7    equipment.

8    46. The Board also approves field trips, handles locker installation, deals

9    with student transportation, sets the student dress and grooming code, and other

10   minutiae.

11   47. To accomplish these goals, the Board typically has 18 regular meetings

12   each year.

13   48. Students attend Board meetings to receive awards, to speak about issues

14   affecting their schools, to appear before the Board as representatives of student

15   government, to attend disciplinary hearings, and to perform for the assembled crowd.

16   49. Board members and District employees have encouraged students to

17   attend and participate in School Board meetings.

18   50. In certain cases, student attendance at Board Meetings is mandatory.

19   51. Students and minors often attend the meetings.

20   52. These public meetings usually take place on school property–either in the

21   Board's administration building or at a school building. *See, e.g.,* April 17, 2014 and

22   June 26, 2014 agendas, meetings held at Woodcrest Junior High School.

23   53. The Board retains complete control over the meeting; it sets the agenda

24   and the schedule. *See* Board Policy BB 9322(a).

25

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

26

1    54. Board meetings begin with a roll call and a closed session.

2    55. The Board deals with student disciplinary actions at the closed-door

3 portion of its public meetings. Students facing disciplinary action for serious offenses

4 are permitted to speak with the Board directly in connection with their situation.

5    56. After the closed session, the meeting schedule is normally as follows:

6 First, a report on the closed session action.  Second, the Pledge of Allegiance.  Third,

7 the invocation.  Fourth, presentations by and to students, then employees, then the

8 Board's student member.

9    57. The regular open meeting portion usually beings at 7:00 p.m.

10    58. District principals or assistant principals often give the Pledge of

11 Allegiance.  However, at times students have given it.  *See, e.g.,* Minutes Sept. 19,

12 2013 (Don Lugo HS student).

13    59. After the pledge, the invocation is offered.

14    60. Invocations are usually given by religious figures in the community.

15    61. Immediately following the invocations are presentations.  These include

16 students.  There is usually a  "Student Showcase" portion in which students perform

17 and a "Student Recognition" portion when the Board recognizes students for their

18 achievements.

19    62. For instance, at May 15, 2014 meeting, the presentations included a

20 "Student Showcase" during which "Glenmeade Elementary School third grade

21 students presented famous people biographies."  Then JROTC students from Don

22 Lugo High School "presented the colors."  The Board then "presented certificates and

23 flags to graduating seniors who have enlisted in the armed forces."  For the final

24 presentation, the Don Lugo High School girls' varsity softball team expressed

25

26

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

gratitude to the Board for improvements to their field.  *See Minutes of the Regular Meeting of the Board*, May 15, 2014.

63. The May 1, 2014 presentations included a "Student Showcase" featuring the Rhodes Elementary School spirit leaders, the Rhodettes, performing cheer routines. The Presentations also included "Student Recognition" of a seventh-grader for receiving an award.  *See Minutes of the Regular Meeting of the Board*, May 1, 2014.

64. In one of the student presentations, first graders at Hidden Trails Elementary School performed for the Board.  The Board left their dais, and sat with the audience to watch the 12-minute performance.  The children sang "This is our World (treat it right)," "Swinging on a Star," and then recognized their heroes from George Washington to Abraham Lincoln, to their moms and dads.  *Available at* https://www.youtube.com/watch?v=tC0KysjRKZ0.

65. Like the Hidden Trails first-graders' presentation, student recognition by and presentations to the Board are often a team or class affair.  The entire athletic team (like the Rhodettes or the Don Lugo HS varsity softball team) or student club (like the Don Lugo HS JROTC) or class is invited to the Board meeting.

66. The meeting room seats approximately 40 people.  Because of the student presentations and the Board's recognition of their accomplishments, the room is full of students' family members and plaintiffs note it can be difficult to get a seat.

67. Also included in the Presentations section is "Employee Recognition" during which CVUSD employees' achievements are recognized.

68. After the Presentations, the Board hears "Comments from a Student Representative."  For instance, on January 16, 2014, the Student Representative "reported that it was the last day of finals for high school and congratulated students

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

for persevering." She "congratulated seniors who have received college acceptance letters" and "reminded students" to join student government.

69. The Student Representative is part of the Board. Board Bylaw AR 9150 created a student advisory council, whose "president shall serve as the student representative on the Board of Education." The "student representative on the Board of Education may be sworn in at the first regular Board meeting in June and shall take office commencing July 1."

70. The Student Representative speaks on a wide variety of issues including negotiations with Associated Chino Teachers, bad air quality, common core implementation, Student Government Day, droughts and water conservations, campus deforestation, and expressing thanks on behalf of students to employees and others who help the schools. *See* Minutes for May 1, April 17, March 6, February 20, and February 6, 2014 meetings.

71. The Student Representative votes at board meetings. *See, e.g.,* Minutes for January 16, 2014 meeting, page 3, items II.A.1, II.B.1, III.B.1 and II.B.2.

72. The Student Representative directly represents student interests at the Board's meeting. The meeting gives student representatives–and thereby all the students–an opportunity to draw attention to issues that affect their educational experience. *See* CVUSD Policy E 9150 and Board Bylaw AR 9150(a) attached as exhibits 1 and 2.

73. After the Student Representative makes their comments, CVUSD employees make comments to the Board.

74. Students and their parents participate in the meetings' public comments.

75. Prayers were given at all the aforementioned Board meetings.

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

76. Students were present during those prayers.

77. Just prior to adjournment, Board members are given time for "Communications." Board members use this time to discuss their individual work within CVUSD.  For instance, on January 16, 2014, Ms. Orozco wished the Student Representative a belated happy birthday; Andrew Cruz spoke about a parent who donated paper to a school and his school visits; Ms. Hernandez-Blair mentioned that she was wearing Cortez Elementary School spirit wear and thanked Chino High School staff for helping her put on an event; Mr. Na invited the Cal Aero Preserve Academy a CVUSD school to give a technology presentation to the Board.

78. At that same meeting, CVUSD Board of Education President James Na said "our lives begin in the hospital and end in the church, and urged everyone who does not know Jesus Christ to go and find Him."  Mr. Cruz "closed by reading Psalm 143."[1]

---

[1] Psalm 143 (New Living Translation) reads (emphasis added):
  Hear my prayer, O Lord; listen to my plea! Answer me because you are faithful and righteous.
  Don't put your servant on trial, for no one is innocent before you.
  My enemy has chased me.
  He has knocked me to the ground and forces me to live in darkness like those in the grave.
  I am losing all hope; I am paralyzed with fear.
  I remember the days of old. I ponder all your great works and think about what you have done.
  I lift my hands to you in prayer. I thirst for you as parched land thirsts for rain.
  Come quickly, Lord, and answer me, for my depression deepens. Don't turn away from me, or I will die.
  Let me hear of your unfailing love each morning, for I am trusting you.
  Show me where to walk, for I give myself to you.
  Rescue me from my enemies, Lord; I run to you to hide me.

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

1   79. Mr. Na and Mr. Cruz typically do this during the Communications part.

2   Mr. Cruz closes with a Bible reading.  For instance, the minutes show that Mr. Cruz

3   read:

4       a.  Psalm 143:8          Feb. 6, 2014

5       b.  2 Corinthians        Feb. 20, 2014

6       c.  Galatians 16 [*sic*]  March 6, 2014

7       d.  Galatians 2          March 20, 2014

8       e.  Romans 15:6[2]       May 1, 2014

9       f.  Galatians 5:22-23    May 15, 2014

10

11  80. Mr. Cruz "read a prayer regarding being a sinner and about forgiveness."

12  *See* April 17, 2014 minutes.

13  81. Mr. Na often injects religion into his comments. Mr. Na does this to the

14  point of proselytizing and discussing theology.

15  82. For instance, Mr. Na:

16      a.  "congratulated Calvary Chapel Solid Rock for their work on the

17          National Day of Prayer at Chino Hills city hall, and said that guest

18          pastor Larry Powers from Calvary Chapel Golden Springs gave a

19  _____

20  Teach me to do your will, for you are my God.
    May your gracious Spirit lead me forward on a firm footing.

21  For the glory of your name, O Lord, preserve my life.  Because of your
    faithfulness, bring me out of this distress.

22  In your unfailing love, silence all my enemies and destroy all my foes,
    for I am your servant.

23

24  [2] Romans 15:6 (New Living Translation) reads, "Then all of you can join together with
    one voice, giving praise and glory to God, the Father of our Lord Jesus Christ."

25                           15
    FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

26

great message; spoke about being created in God's image." *See* May 1, 2014 minutes.

b. mentioned a tragic news story "and said this tells us how much we need God in today's society; thanked God for sending his son Jesus Christ so that our sins are forgiven and may have eternal life in heaven; and wished everyone a nice Easter." *See* April 17, 2014 minutes.

c. "said we have a short time on this earth and that he wants misconceptions to be cleaned out, the cloud removed, and for God to give us wisdom." *See* March 6, 2014 minutes.

d. "said that he as a Christian has hope with Jesus Christ as Savior." *See* February 20, 2014 minutes.

e. "thanked God for sending His Son so that we could have eternal life … [and] thanked the students still present at the Board meeting at 10:31 p.m." *See* December 12, 2013 minutes.

f. "said we have all different fingerprints and are all specially made by God." *See* November 11, 2013 minutes.

83. The day after the Supreme Court's first decisions on gay marriage (*United States v. Windsor*, 133 S. Ct. 2675 (2013); *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013)) Mr. Na "spoke about recent local or federal rulings and the negative impact to staff and community members; spoke about man being flawed and incomplete; agreed with what Pastor Frank Gonzales said about Jesus Christ." *See* June 27, 2013 minutes.

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

84. James Na also reads from the Bible during Board meetings, including John 3:16, "For this is how God loved the world: He gave his one and only Son, so that everyone who believes in him will not perish but have eternal life."  October 3, 2013.

85. Board members inject religion into other aspects of CVUSD as well. Last December, CVUSD Board of Education President James Na, sent a "Merry Christmas" letter to all "CVUSD family member[s]."  The 97-word letter contained this 164-word post script for Christians: "For those who celebrate Christmas, I have included an excerpt from the series of Pastor Jack's Christmas story called, 'The Greatest Story Ever Told'":

> It's the greatest story ever told.  But glory be to God that it is much more
> than a story, it is the reality that is above all others.  It is that God
> Himself would come to us in what is called Christians.  The act and
> mission of Jesus Christ was to become human like us, to love us, and to
> purchase for us salvation.  It is no wonder then that the Bible proclaims,
> "For God so loved the world that He gave His only begotten Son, that
> whoever believes in Him should not perish, but have everlasting life.  For
> God did not send His Son into the world to condemn the world, but that
> the world through Him might be saved."  Nothing can take away this
> eternal truth and give that is yours through Jesus Christ, God's only Son.
> (*See* Na Letter, attached as Exhibit 3).

86. "Pastor Jack" is Mr. Na's pastor at Calvary Chapel Chino Hills, Pastor Jack Hibbs.  According to Mr. Na's biography on the CVUSD website, "He is active

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

in the Calvary Chapel Chino Hills Watchman Ministry" which is designed to "promote a biblical worldview in all spheres of society, culture, and public policy."

87. The Board passed a policy for including these invocations in December 2013.  (Board Invocation Policy is attached as Exhibit 4). Invocations were offered before the policy was passed.  Invocations have been delivered since at least June 2010 and continue.

88. Because School Board meetings are held in District schools, are attended by teachers and students, feature active participation by students, and result in the setting of District and school policies, School Board meetings are an integral component of the District's public school system. As such, the prayers that start each School Board meeting, Mr. Na's proselytizing, and Mr. Cruz's Bible readings are part of the public school system.

## Facts: Attempts to Resolve Without Litigation

89. FFRF sent a letter to the Board on September 14, 2013 asking the Board to "refrain from scheduling prayers as part of future school board meetings." (*See* FFRF Letter, attached as Exhibit 5).

90. The Board responded on October 7, 2013 with a letter from Margaret A. Chidester refusing to discontinue the prayers.  (*See* Chidester Letter attached as Exhibit 6).

91. FFRF sent other letters to the Board on November 11, 2012 regarding religious groups participating in Back to School night; on November 5, 2010 and December 10, 2010 requesting records relating to the school district's Bible class.

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

**Facts: Parties Reactions to Prayers, Proselytizing, and Bible Readings**

92. Plaintiffs, exercising their rights and responsibilities of citizenship, have at various times followed CVUSD by attending meetings and reviewing the Board's meeting minutes. Plaintiffs intend to stay apprised of official CVUSD activities by attending future Board meetings.

93. Plaintiffs feel alienated from Board meetings because of these prayers, Bible readings and proselytizing, and therefore feel excluded from the political process that controls their education, their children's education, and their jobs.

94. Plaintiffs feel pressured and coerced to join or at least defer to the Christian beliefs propounded at Board meetings, in particular the minor Doe plaintiffs.

95. Plaintiffs disagree with the religious messages the Board forces upon them at Board meetings. They feel that the government is taking sides against them on religious questions.

96. Plaintiffs are offended by the prayers, Bible readings, and proselytizing because they conflict with their views and are state-sanctioned religious speech.

97. The prayers, Bible readings, and proselytizing offends plaintiffs in that their primary purpose is to promote religion and particularly promote Christianity in an inherently coercive school environment. Plaintiffs find this excessive entanglement between church and state personally offensive.

98. The Does have suffered and will suffer irreparable injury through the unconstitutional establishment of religion as complained of herein, and they have no adequate remedy at law.

19
FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

# GROUNDS FOR RELIEF

## First Ground for Relief: Federal Establishment Clause Violation

99. Plaintiffs incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 98.

100.     Defendants' policy and custom of opening board meetings with invocations violates the Establishment Clause of the First Amendment.

101.     There is no secular or educational purpose for the prayers.

102.     This custom and practice has the principal and primary purpose of advancing a particular religious preference and religion over nonreligion.

103.     This custom and practice of Defendants foster an excessive governmental entanglement with religion.

104.     The customs and practices of Defendants have constituted an establishment of religion in violation of the First and Fourteenth Amendments to the United States Constitution.

105.     Defendants' policy and custom of including Bible reading proselytizing and Bible reading violates the Establishment Clause of the First Amendment.

106.     There is no secular or educational purpose for the Bible readings or proselytizing.

107.     These customs and practices have the principal and primary purpose of advancing a particular religious preference and religion over nonreligion.

108.     These customs and practices of Defendants foster an excessive governmental entanglement with religion.

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

109.     The customs and practices of Defendants have constituted an establishment of religion in violation of the First and Fourteenth Amendments to the United States Constitution.

110.     The Court should find these practices unconstitutional and award the Plaintiffs appropriate relief under law and equity.

### Second Ground for Relief: Equal Protection Clause Violation

111.     Plaintiffs incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 110.

112.     Defendants' policy and custom of opening board meetings with official sectarian invocations violates the Equal Protection Clause of the Fourteenth Amendment. The invocation and its context offer legal sanctuary, comfort and a public forum to religionists, substantially to the detriment of the religiously unaffiliated and non-theists.

113.     Defendants' policy and custom of including proselytizing and Bible reading violates the Equal Protection Clause of the Fourteenth Amendment. The invocation and its context offer legal sanctuary, comfort and a public forum to religionists, substantially to the detriment of the religiously unaffiliated and non-theists.

114.     The Court should find these practices unconstitutional, and award the Plaintiffs appropriate relief under law and equity.

21

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

### Third Ground for Relief: Deprivation of Plaintiffs' Rights under California Constitution

115.     Plaintiffs incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 114.

116.     Defendants' conduct as alleged herein are given under color of law, by Board members or clergy selected by Board officials, fulfilling their duties as elected officials during official School District Board meetings conducting School District business.

117.     Board members proselytizing in their official capacity and sponsoring sectarian prayers at meetings constitutes the custom and policy of the Board.

118.     Defendants' conduct of prayer, Bible reading and proselytizing serve no secular purpose, have the effect of advancing and endorsing one particular sect, and entangle the government with religion. The prayers, Bible readings, and proselytizing seek to advance the Christian religion while disparaging non-Christians.

119.     Defendants' conduct of prayer, Bible reading and proselytizing violate Plaintiffs' constitutional rights in that the conduct violates the California No Preference and Establishment Clauses: "Free exercise and enjoyment of religion without discrimination or preference are guaranteed. This liberty of conscience does not excuse acts that are licentious or inconsistent with the peace or safety of the State. The Legislature shall make no law respecting an establishment of religion. A person is not incompetent to be a witness or juror because of his or her opinions on religious beliefs." Cal. Const. art. I, §4.

120.     Defendants have, under color of federal and state statutes, ordinances, regulations, policies, custom, and usage, deprived Plaintiffs of rights secured by the California Constitution, entitling them to a remedy.

**Fourth Ground for Relief: Defendants' Conduct Force and Coerce Citizens to Participate in Religious Rituals In Violation of Plaintiffs' Rights Under the California Constitution.**

121.     Plaintiffs incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 120.

122.     California Civil Code Section 52.1 authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 331, 70 Cal.Rptr.2d 844, 949 P.2d 941 (1998).

123.     This includes claims against anyone who tries "to force plaintiff to do something that he was not required to do under the law." *Austin B. v. Escondido Union School District,* 149 Cal.App.4th 860, 883, 57 Cal.Rptr. 454 (2007) (citing Jones, 17 Cal.4th at 334, 70 Cal.Rptr.2d 844, 949 P.2d 941).

124.     Defendants force plaintiffs to attend a Christian religious ritual and listen to religious proselytizing in order to exercise their constitutionally protected right to participate in their democratic government and choose their own method and form of worship, including none at all.

125.     Defendants are liable under California Civil Code Section 52.1 for forcing and coercing Plaintiffs into religious worship.

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

# REQUEST FOR RELIEF

126.    An actual controversy exists between the parties as to whether Defendants' conduct of prayers, Bible readings, and proselytizing at Board meetings violates the Establishment Clause and the Equal Protection Clause.

127.    In addition, an actual controversy exists between the parties as to whether Defendants' conduct of prayer practices, Bible readings, and proselytizing at Board meetings violates the California Constitution.

128.    Accordingly, Plaintiffs respectfully request the following relief:

    a. Declaratory judgment that Defendants' conduct of prayers, Bible readings, and proselytizing at Board meetings violate Plaintiffs' rights protected by the First and Fourteenth Amendments to the United States Constitution;

    b. Declaratory judgment that Defendants' conduct of prayers, Bible readings, and proselytizing at Board meetings violate Article I, section 4 and Article XVI, section 5 of the California Constitution;

    c. Declaratory judgment that the customs and practices of the District which promote, endorse and establish religious activities, prayer and instruction in District schools violates those same provisions of the United States Constitution and California Constitution;

    d. Permanent Injunction enjoining Defendants their agents, employees and successors in office from conducting or permitting any school-sponsored religious exercises or prayer, including proselytizing, preaching, Bible-readings, or otherwise using their

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

secular offices to promote their personal religious beliefs as part of any Board meeting;

   e. Nominal damages for past violations of Plaintiffs' constitutional rights;

   f. An order awarding Plaintiffs the costs of this action including a reasonable attorney's fee under 42 U.S.C. §1988;

   g. An order awarding Plaintiffs the costs of this action including a reasonable attorney's fee under California Code of Civil Procedure § 1021.5, California Civil Code § 52.1(h), and under the substantial benefit doctrine;

   h. Such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: December 12, 2014

David J.P. Kaloyanides

Andrew L. Seidel PHV
Rebecca Markert PHV
Freedom From Religion Foundation

Attorneys for Plaintiffs
Freedom From Religion
Foundation, Inc., Michael Anderson,
Larry Maldonado, and Does
1 through 20, inclusive.

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**EXHIBIT 1**

23
24
25

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

26

Bylaw of the Board                                                                    E 9150

**STUDENT BOARD MEMBER GUIDELINES**

**Duties of Student Board Member**

The duties of the student board member include the following:

1.      To provide continuing input for board deliberations.
2.      To strengthen communications between the board and district students.
3.      To represent all students and facilitate the discussion of all sides of issues. This does not preclude the student board member from stating his/her individual opinion.

**Selection and Term**

The President of the Student Advisory Council (SAC) serves as the student member on the Board of Education. The selection is made by the student's high school on a rotating basis, alphabetically.

The term of office shall be July 1, - June 30.

**Vacancy**

If the position of student board member becomes vacant, the Vice President of the SAC shall be sworn in as the student member on the Board of Education for the remainder of the current school year. The selection of the SAC Vice President is made by the student's high school on a rotating basis, alphabetically. The school is the next high school alphabetically from the SAC president's school.

**Board Materials/Information**

The Superintendent or designee's office shall provide the student board member with full and complete agendas and copies of any materials received by the Board except for those materials covered in closed session and any other confidential materials. The Superintendent's office shall serve as the "home office" for the student board member, where he/she may make use of secretarial facilities and receive advice and/or information upon request.

**Chino Valley Unified School District**
Exhibit approved: October 7, 2010

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**EXHIBIT 2**

23
24
25

27

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

26

Bylaws of the Board                                          AR 9150(a)

## STUDENT BOARD MEMBER

### Name and Authority

The name of the organization shall be the Student Advisory Council to the Board of Education and the Chino Valley Unified School District, abbreviated SAC.

### Purpose
1.      To increase leadership opportunities for all students.
2.      To provide student input and share common concerns and ideas.
3.      To advise the Superintendent, or designee, and/or the Board of Education on matters of concern related to student rights and responsibilities and/or decisions on Board Policies which may be of interest to students.

### Bylaws of the Student Advisory Council

The Board of Education and District administration are directly responsible for the welfare of the schools in the District. All student authority in SAC, therefore, is delegated by the Board of Education and is an exercise in student responsibilities.

### Membership

1.      The membership of SAC shall consist of two ASB members and one member-at-large (total=3) from each comprehensive high school, exclusive of the Board representative.

   Each 9-12 alternative school shall be allowed one representative. Each junior high school shall be allowed one representative. Each representative is entitled to one alternate.

   Each principal member has one vote; in cases of absence, the respective alternate member will receive the voting privilege.

2.      Alternates at each school shall be appointed by the appropriate school's student council.

### Officers

1.      The SAC shall consist of three officers: a president, a vice president, and secretary.   Alphabetical rotation by school shall be used in the selection process for all officers.

AR 9150(b)

**STUDENT BOARD MEMBER** (cont.)

2. The president shall serve as the student representative on the Board of Education and shall be responsible for providing all SAC reports. The student representative on the Board of Education shall be determined by the appropriate school and shall not be included in the individual school's representation on the SAC. The president shall vote only in the case of a tie.

3. The principal of the school (or designee) shall submit the name of the student representative on the Board of Education to the SAC advisor in writing prior to the last regular Board meeting in May. The student representative on the Board of Education may be sworn in at the first regular Board meeting in June and shall take office commencing July 1.

4. The SAC vice president shall be determined by the appropriate school (next school in alphabetical order). In the absence of the president, the vice president shall preside over the SAC meetings. The vice president will assume responsibility for public relations and communications. All information to be provided to the public and/or schools will be reviewed and approved by the SAC advisor prior to release.

5. The secretary shall be responsible for recording of all SAC meeting minutes. The minutes shall be approved by the SAC advisor before distribution. All minutes and meeting notices shall be distributed by the SAC advisor's secretary.

**Meetings**

1. SAC shall meet every other month or on as-needed basis. The Superintendent shall designate a District administrator to serve as the SAC advisor. The advisor (or designee) shall be present at all SAC meetings and be responsible for providing SAC members and activities directors/advisors with the official SAC schedule in a timely manner.

2. Nine voting members (president not included) shall be present in order for SAC to conduct official business.

3. Designated alternate members should attend and assume voting privileges in the absence of their respective principal members.

4. The rules contained in *Robert's Rules of Orders* shall govern the SAC in all cases where they are applicable.

5. The president shall have the power to appoint, with the approval of the SAC membership, such committees as he/she deems necessary.

AR 9150(c)

**STUDENT BOARD MEMBER** (cont.)

**Agenda Building**

Any SAC member may submit items for the agenda. Agenda items shall be submitted to the SAC advisor's secretary at least five school days prior to the SAC meetings. The advisor's secretary shall be responsible for preparing the SAC agenda.

**Qualifications**

1.    SAC members must maintain a 2.0 grade point average.
2.    The SAC president and vice president shall be classified as a junior or senior during the term of office. The SAC secretary shall be classified as a sophomore, junior, or senior during the term of office.

**Attendance**

Two consecutive unexcused absences shall constitute grounds for replacement of a SAC member. Pursuant to CVUSD Board Policy 5113, excused absences include the following:

1.    Illness
2.    Medical appointment
3.    Bereavement
4.    School activity
5.    Court appearance
6.    Religious holiday or ceremonies
7.    Employment interview
8.    Family emergency
9.    Severe weather condition

**Method of Amendment**

Any change made in the SAC Bylaws shall be adopted by the Chino Valley Unified School District Board of Education prior to implementation.

**Chino Valley Unified School District**
Regulation approved: August 17, 1995
Revised:  October 7, 2010

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**EXHIBIT 3**

23

24

25

26

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Dear CVUSD family member:

Merry Christmas!

Thank you. I believe working with children is the most honorable role one can achieve in his or her lifetime.

Your every drop of love, encouragement, and discipline to our students has given utmost assurance for this nation's brighter future.

Due to your long unwavering personal commitment and enduring daily sacrifice, our students have continued to prosper in excellent learning environments.

Forever, I will salute and appreciate each one of you for being just who you are: great public servants.

Job well done! Thank you, have a wonderful merry Christmas and a happy New Year.

James Na
Board of Education
Chino Valley Unified School District

P.S. For those who celebrate Christmas, I have included an excerpt from the series of Pastor Jack's Christmas story called, "The Greatest Story Ever Told."

It's the greatest story ever told. But glory be to God that it is much more than a story, it is the reality that is above all others. It is that God Himself would come to us in what is called Christmas. The act and mission of Jesus Christ was to become human like us, to love us, and to purchase for us salvation. It is no wonder then that the Bible proclaims, **"For God so loved the world that He gave His only begotten Son, that whoever believes in Him should not perish, but have everlasting life. For God did not send His Son into the world to condemn the world, but that the world through Him might be saved."** Nothing can take away this eternal truth and gift that is yours through Jesus Christ, God's only Son.

JN.pk

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**EXHIBIT 4**

23
24

25
FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES
26



**CHINO VALLEY**
UNIFIED SCHOOL DISTRICT

5130 Riverside Drive • Chino, CA 91710 • 909.628.1201 • www.chino.k12.ca.us
Student Achievement • Safe Schools • Positive School Climate • Humility • Civility • Service

**BOARD OF EDUCATION:** Andrew Cruz • Charles E. Dickie • Irene Hernandez-Blair • James Na • Sylvia Orozco • **SUPERINTENDENT:** Wayne M. Joseph

December 13, 2013

Dear religious leader,

The Board of Education makes it a policy to invite members of the clergy in the boundaries of the Chino Valley Unified School District to voluntarily offer a prayer before the beginning of its meetings for the benefit and blessing of the Board of Education.  As the leader of one of the religious congregations with an established presence in the local community of the Chino Valley Unified School District, or in your capacity as a chaplain for one of the fire departments or law enforcement agencies within the boundaries of the Chino Valley Unified School District, you are eligible to offer this important service at an upcoming meeting of the Board of Education.

If you have an interest in providing an invocation, please send a written reply at your earliest convenience to the Superintendent's designee at the address included on this letterhead. Clergy are scheduled on a first-come, first-serve, or other random basis. The dates of the Board of Education's scheduled meetings for the upcoming year are listed on the following, attached page. If you have a preference among the dates, please state that request in your written reply.

This opportunity is voluntary, and you are free to offer the invocation according to the dictates of your own conscience. To maintain a spirit of respect and ecumenism, the Board of Education requests only that the prayer opportunity not be exploited as an effort to convert others to the particular faith of the invocational speaker, nor to disparage any faith or belief different from that of the invocational speaker.

On behalf of the Board of Education, I thank you in advance for considering this invitation.

Sincerely,

Carl Hampton
Coordinator, GATE/AVID
Superintendent's designee

WJ:pk

# Chino Valley Unified School District



**CHINO VALLEY**
UNIFIED SCHOOL DISTRICT

Student Achievement • Safe Schools • Positive School Climate
Humility • Civility • Service

## 2014 Board Meeting Calendar

| | |
|---|---|
| January 16, 2014 | Regular |
| February 6, 2014 | Regular |
| February 20, 2014 | Regular |
| March 6, 2014 | Regular |
| March 20, 2014 | Regular |
| April 17, 2014 | Regular |
| May 1, 2014 | Regular |
| May 15, 2014 | Regular |
| June 12, 2014* | Regular |
| June 26, 2014* | Regular |
| July 17, 2014 | Regular |
| August 7, 2014 | Regular |
| September 4, 2014 | Regular |
| September 18, 2014 | Regular |
| October 2, 2014 | Regular |
| October 16, 2014 | Regular |
| November 6, 2014 | Regular |
| November 20, 2014 | Regular |
| December 11, 2014* | Organizational |

Board of Education meetings are held the first and third Thursdays of the month (except where indicated by asterisk). The meetings will begin at 7:00 p.m. in the Board room at the District Service Center, Chino Valley Unified School District, 5130 Riverside Drive, Chino, unless otherwise posted.  Additional meetings will be announced by the Board President on an as-needed basis.

Board approved: December 12, 2013

**Chino Valley Unified School District**
**Resolution 2013/2014-11**
**Establishing a Policy Regarding Invocations**
**at Meetings of the Board of Education of the**
**Chino Valley Unified School District**

**WHEREAS,** the School Board is an elected legislative and deliberative public body, serving the students who attend the Chino Valley Unified School District; and

**WHEREAS,** legislative bodies in America have long maintained a tradition of solemnizing proceedings by allowing for an opening prayer before each meeting, for the benefit and blessing of the legislative bodies; and

**WHEREAS,** the Board of Education has long followed a practice of inviting members of all local clergy of all faiths to provide invocations at Board of Education meetings; and

**WHEREAS,** the Board of Education now desires to adopt this formal, written policy to clarify and codify its invocation practices; and

**WHEREAS,** such prayer before deliberative public bodies has been consistently upheld as constitutional by American courts, including the United States Supreme Court; and

**WHEREAS,** in *Marsh v. Chambers*, 463 U.S. 783 (1983), the United States Supreme Court rejected a challenge to the Nebraska Legislature's practice of opening each day of its sessions with a prayer by a chaplain paid with taxpayer dollars, and specifically concluded, "The opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country. From colonial times through the founding of the Republic and ever since, the practice of legislative prayer has coexisted with the principles of disestablishment and religious freedom." Id., at 786; and

**WHEREAS,** the Supreme Court further held, "To invoke divine guidance on a public body … is not, in these circumstances, an "establishment of religion or a step toward establishment; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country." Id., at 792; and

**WHEREAS,** the Supreme Court affirmed in *Lynch v. Donnelly*, 465 U.S. 668 (1984), "Our history is replete with official references to the value and invocation of Divine guidance in deliberations and pronouncements of the Founding Fathers and contemporary leaders." Id., at 675; and

**WHEREAS,** the Supreme Court further stated, "Those government acknowledgments of religion serve, in the only ways reasonably possible in our culture, the legitimate secular purposes of solemnizing public occasions, expressing confidence in the future, and encouraging the recognition of what is worthy of appreciation in

1

society. For that reason, and because of their history and ubiquity, those practices are not understood as conveying government approval of particular religious beliefs." Id., at 693 (O'Connor, J., concurring); and

WHEREAS, the Supreme Court also famously observed in *Zorach v. Clauson*, 343 U.S. 306 (1952), "We are a religious people whose institutions presuppose a Supreme Being." Id., at 313-14; and

WHEREAS, the Supreme Court acknowledged in *Holy Trinity Church v. United States*, 143 U.S. 457 (1892), that the American people have long followed a "custom of opening sessions of all deliberative bodies and most conventions with prayer ...," Id., at 471; and

WHEREAS, the Supreme Court has determined, "The content of [such] prayer is not of concern to judges where … there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." *Marsh*, 463 U.S. at 794-795; and

WHEREAS, the Supreme Court also proclaimed that it should not be the job of the courts or deliberative public bodies "to embark on a sensitive evaluation or to parse the content of a particular prayer" offered before a deliberative public body. Id.; and

WHEREAS, the Supreme Court has counseled against the efforts of government officials to affirmatively screen, censor, prescribe and/or proscribe the specific content of public prayers offered by private speakers, as such government efforts would violate the First Amendment rights of those speakers. See, e.g., *Lee v. Weisman*, 505 U.S. 577, 588-589 (1992); and

WHEREAS, the Board of Education intends, and has intended in past practice, to adopt a policy that upholds an individual's "free exercise" rights under the First Amendment; and

WHEREAS, the Supreme Court has repeatedly clarified that "there is a crucial difference between government speech endorsing religion, which the Establishment Clause forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Bd. of Educ. of Westside Community Schools v. Mergens*, 496 U.S. 226, 250 (1990); and

WHEREAS, the Board of Education intends, and has intended in past practice, to adopt a policy that does not proselytize or advance any faith, or show any purposeful preference of one religious view to the exclusion of others; and

WHEREAS, this policy set forth below has been approved by two federal courts in the cases of *Pelphrey v. Cobb County* (11th Cir. 2008) 547 F.3d 1263 and *Rubin v. City of Lancaster* (2013) 810 F3d. 1087; and

**WHEREAS,** the Board of Education recognizes its constitutional duty to interpret, construe, and amend its policies and regulations to comply with constitutional requirements as they are announced.

**NOW, THEREFORE, BE IT RESOLVED** by the Board of Education of the Chino Valley Unified School District, that the Board of Education does hereby adopt and establish the following written policy regarding opening invocations before meetings of the Board of Education:

1.     In order to solemnize proceedings of the Board of Education, it is the policy of the Board of Education to allow for an invocation or prayer to be offered at its meetings for the benefit of the Board of Education and the community.

2.     The prayer shall not be listed or recognized as an agenda item for the meeting so that it may be clear the prayer is not considered a part of the public business.

3.     No member of the Board of Education or District employee or any other person in attendance at the meeting shall be required to participate in any prayer that is offered.

4.     The prayer shall be voluntarily delivered by an eligible member of the clergy or a religious leader in the boundaries of the Chino Valley Unified School District. To ensure that such person (the "invocational speaker") is selected from among a wide pool of the District's clergy/religious leaders, on a rotating basis, the invocational speaker shall be selected according to the following procedure:

      a.     The Superintendent's designee shall compile and maintain a database (the "Congregations List") of the religious congregations with an established presence in the boundaries of the Chino Valley Unified School District.

      b.     The Congregations List shall be compiled by referencing the listing for "churches," "congregations," or other religious assemblies in the annual Yellow Pages telephone directory or directories published for the Chino Valley Unified School District, research from the Internet, and consultation with local chambers of commerce. All churches, congregations or other religious assemblies with an established presence in the boundaries of the Chino Valley Unified School District are eligible to be included in the Congregations List, and any such church, congregation or religious assembly can confirm its inclusion by specific written request to the Superintendent's designee.

      c.     The Congregations List shall also include the name and contact information of any chaplain who may serve one or more of the fire departments or law enforcement agencies within the boundaries of the Chino Valley Unified School District or any nearby military facilities.

      d.     The Congregations List shall be updated, by reasonable efforts of the Superintendent's designee, in November of each calendar year.

e.     Within thirty (30) days of the effective date of this policy, and on or about December 1 of each calendar year thereafter, the Superintendent's designee shall mail an invitation addressed to the "religious leader" of each church, congregation or religious assembly listed on the Congregations List, as well as to the individual chaplains included on the Congregations List.

f.     The invitation shall be dated at the top of the page, signed by the Superintendent's designee at the bottom of the page, and read as follows:

*Dear religious leader,*

*The Board of Education makes it a policy to invite members of the clergy in the boundaries of the Chino Valley Unified School District to voluntarily offer a prayer before the beginning of its meetings, for the benefit and blessing of the Board of Education.  As the leader of one of the religious congregations with an established presence in the local community of the Chino Valley Unified School District, or in your capacity as a chaplain for one of the fire departments or law enforcement agencies within the boundaries of the Chino Valley Unified School District, you are eligible to offer this important service at an upcoming meeting of the Board of Education.*

*If you have an interest in providing an invocation, please send a written reply at your earliest convenience to the Superintendent's designee at the address included on this letterhead.  Clergy are scheduled on a first-come, first-serve, or other random basis. The dates of the Board of Education's scheduled meetings for the upcoming year are listed on the following, attached page. If you have a preference among the dates, please state that request in your written reply.*

*This opportunity is voluntary, and you are free to offer the invocation according to the dictates of your own conscience. To maintain a spirit of respect and ecumenism, the Board of Education requests only that the prayer opportunity not be exploited as an effort to convert others to the particular faith of the invocational speaker, nor to disparage any faith or belief different from that of the invocational speaker.*

*On behalf of the Board of Education, I thank you in advance for considering this invitation.*

*Sincerely,*

*Superintendent's designee*

g.     Consistent with paragraph 7 hereof and, as the invitation letter indicates, the respondents to the invitation shall be scheduled on a first-come, first-served, or other random basis to deliver the prayers.

4

h.    If the selected invocational speaker does not appear at the scheduled meeting, the Board President may ask for a volunteer from among the Board or the audience to deliver the invocation.

i.    The Superintendent's designee shall post the following information on the District's webpage: (i) this resolution, (ii) the Congregation List and (iii) the invitation set forth herein to churches, congregations and religious associations within the boundaries of the Chino Valley Unified School District.

5.    No invocational speaker shall receive compensation for his or her service.

6.    The Superintendent's designee shall make every reasonable effort to ensure that a variety of eligible invocational speakers are scheduled for the Board of Education meetings. In any event, no invocational speaker shall be scheduled to offer a prayer at consecutive meetings of the Board of Education or at more than three (3) Board of Education meetings in any calendar year.

7.    Neither the Board of Education nor the Superintendent's designee shall engage in any prior inquiry, review of, or involvement in, the content of any prayer to be offered by an invocational speaker.

8.    The Board President shall introduce the invocational speaker and the person selected to recite the Pledge of Allegiance and invite only those persons who wish to participate.

9.    This policy is not intended, and shall not be implemented or construed in any way, to affiliate the Board of Education with, nor express the Board of Education's preference for, any faith or religious denomination. Rather, this policy is intended to acknowledge and express the Board of Education's respect for the diversity of religious denominations and faiths represented and practiced among the citizens who reside in the Chino Valley Unified School District.

**NOW, THEREFORE, BE IT FURTHER RESOLVED** that this policy shall become effective immediately upon approval by the Board of Education.

**APPROVED, PASSED, AND ADOPTED** by the Board of Education of the Chino Valley Unified School District this 17th day of October 2013.

_____
Sylvia Orozco, President

_____
James Na, Vice President

_____
Irene Hernandez-Blair, Clerk

_____
Andrew Cruz, Member

_____
Charles E. Dickie, Member

State of California       )
County of San Bernardino ) ss
City of Chino            )

I, Irene Hernandez-Blair, Clerk of the Board of Education, do hereby certify the foregoing Resolution was duly adopted by the Board of Education at a regular meeting held on the 17th day of October 2013 by the following votes:

AYES: BOARD MEMBERS:
NOES: BOARD MEMBERS:

ABSENT: BOARD MEMBERS:

Irene Hernández-Blair, Board Clerk

7

| **Chino Congregations** | **Address** |
| --- | --- |
| Chino Police Department Chaplain | 13250 Central Avenue |
| Calvary Chapel Chinese Fellowship | 3945 Schaefer Avenue |
| Calvary Chapel Chino Hills | 4201 Eucalyptus Avenue |
| Calvary Chapel of the Chino Valley | 12205 Pipeline Avenue |
| Calvary Church of Chino Valley | 13252 17th Street |
| Casa de Orocion Cristian | 4975 D. Street |
| Cavern Christian Ministries | 13102 6th Street |
| Centro De Fe Iglesia Cuandrangular | 13050 6th Street |
| Child Evangelism Fellowship | 13770 Oaks Avenue |
| Chino Congregation Jehovah's Witnesses | 3999 Walnut Avenue |
| Chino Spanish Seventh Day Adventist Church | 12986 Central Avenue |
| Chino United Methodist Church | 5201 Riverside Drive |
| Chino Valley Chinese Seventh-day Adventist Church | 4136 Riverside Drive |
| ==Chino Valley Islamic Center== | 5565 Daniels Street |
| Christ Cornerstone | 3811 Schaefer Avenue |
| Christ Lutheran Church ELCA | 5500 Francis Avenue |
| Christ the Cornerstone Community Church | 3811 Schaefer Avenue, Suite C |
| Christian House of Prayer | 4975 D. Street |
| Christ's Kingdom Mighty Wind Church | 13831 Roswell Avenue, Suite G |
| Church of Christ in Chino | 11940 Telephone Avenue |
| Cornerstone Community Church of the Nazarene | 13000 Pipeline Avenue |
| CrossPoint Church | 6950 Edison Avenue |
| East Sarang Community Church | 5540 Schaefer Avenue |
| Father's House | 13721 Roswell Avenue #E |
| Park Christian Fellowship | 5559 Park Place |
| First United Reformed Church | 6159 Riverside Drive |
| Fortress Community Church | 13851 Roswell Avenue, Suite A |
| Gateway Community Church | 5885 Schaefer Avenue |
| Gideon's International Chino Camp | 4195 Chino Hills Parkway, PMD 206 |
| Harvest Com. Bible Church-Southern Baptist | 3857 Schaefer Avenue |
| Higher Ground Christian Church | 4845 Cheyenne Way |
| Holy Highway Church | 5102 D Street |
| Immanuel Lutheran Church | 5648 Jefferson Avenue |
| Inland Community Church | 5540 Schaefer Avenue |
| Inland Hills Church | 14670 Ramona Avenue |
| Isaiah's Rock Non-Denominational | 13023 7th Street |
| ==Islam Ahmadiyya Movement Inc.== | |
| ==Ahmadiyya Muslim Community== | 11941 Ramona Avenue |
| Joy Community Church | 13971 Ramona Avenue |
| La Nueva Jerusalem Church of God | 13102 6th Street |
| Latin American Free Methodist Church | 13050 2nd Street |
| Lifesong Community Church | 5171 Edison Avenue, Suite F |
| Life Christian Fellowship | 5171 Edison Avenue |
| Lionheart Christian Fellowship | 3811 Schaefer Avenue |

| **Chino Congregations** (cont.) | **Address** |
| --- | --- |
| Living Waters of Chino | 6010 Walnut Avenue |

| | |
|---|---|
| Living Word Assembly of God | 11887 Telephone Avenue |
| Living Word Christian Center | 5135 "F" Street |
| Mission Pointe Church | 14058 Euclid Ave., Bldg. A |
| New Beginnings Ministries | 4720 Chino Avenue |
| New Hope Christian Fellowship | 13333 Ramona Avenue |
| Our Lady of Guadalupe | 5048 D Street |
| Pipeline Avenue Baptist Church | 11548 Pipeline Avenue |
| Portuguese Speaking SDA Church | 12791 Yorba Avenue |
| Praise Tabernacle Bible | 4550 Eucalyptus Avenue |
| Saint Margaret Mary Catholic Church | 12686 Central Avenue |
| The Bridge | 12765 Oaks Avenue |
| United Prayer Power | 5220 "D" Street |
| Uplifting Christian Center | 4445 Riverside Drive |
| Valley Christian Church | 12410 Norton Avenue |
| Victory Baptist Church | 14132 San Antonio Avenue |
| Vida Bible Institute | 13050 6th Street |
| Yes to Life Church | 13102 6th Street |

| **Chino Hills Congregations** | **Address** |
|---|---|
| Chino Valley Fire District | 14011 City Center Drive |
| Baja Christian Ministries | 4195 Chino Hills Pkwy # 390 |
| Baps Shri Swaminarayan Mandir | 15100 Fairfield Ranch Road |
| Calvary Chapel Chino Hills | 4201 Eucalyptus Ave |
| Calvary Chapel Solid Rock | 15330 Fairfield Ranch Rd Ste C |
| Chino Hills Chinese Baptist Church | 2430 Hawkwood Dr. |
| Chino Hills Foursquare Church | 15558 Avery Street |
| Chino Hills Taiwaniese Church | 2046 Avenida Hacienda |
| Chino Valley Community Church | 14601 Peyton Drive |
| Christ Trinity Community Church | 4195 Chino Hills Pkwy Ste 177 |
| Crosspoint Church | 6950 Edison Avenue |
| Crossroad Community Church | 2600 Grand Ave |
| Emmanuel Romanian Baptist Church | 3144 Wildwood Ct |
| Evangelical Christian Church | 4331 Ironwood Drive |
| Fehan Evangelical Chr-Ame | 4293 Descanso Avenue |
| Iglesia Le Luz Del Mundo | 4333 Descanso Avenue |
| Jemaat Kristen Indon Hosana | 2472 White Dove Lane |
| Living Word of Chino Hills | 15558 Avery Street |
| Loving Savior Chinese Church | 14816 Peyton Drive |
| Loving Savior of the Hills | 14816 Peyton Drive |
| New Wine Community Church | 4166 Kelton Ct. |

| **Chino Hills Congregations** (cont.) | **Address** |
|---|---|
| Parish Holy Child Philippians | 14373 Shady Hollow Lane |
| Redeemer Spanish Assembly of God | 4293 Descanso Avenue |
| St Paul the Apostle Catholic Church | 14085 Peyton Drive |
| True Light Presbyterian Church | 3950 Poplar Lane |

| **South Ontario Congregations** | **Address** |
| --- | --- |
| Freeway Christian Church | 14393 Euclid Avenue |
| St Elizabeth Ann Seton Church | 2713 S. Grove Avenue |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**EXHIBIT 5**

23
24
25

30

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

26

# FREEDOM FROM RELIGION *foundation*

P.O. BOX 750 · MADISON, WI 53701 · (608) 256-8900 · WWW.FFRF.ORG

September 19, 2013

*SENT VIA U.S. MAIL & EMAIL to:* sylvia_orozco@chino.k12.ca.us

Sylvia Orozco
President
Chino Valley Board of Education
5130 Riverside Drive
Chino, CA 91710

Re:     Prayers at Board of Education Meetings

Dear Ms. Orozco and Board Members:

I am writing on behalf of the Freedom From Religion Foundation (FFRF) regarding a serious
constitutional violation occurring in your school district. We were contacted by a Chino Hills
resident about the Chino Valley Board of Education ("Board") practice of scheduling prayer as
part of its meetings. FFRF is a national nonprofit organization with more than 19,000 members,
including more than 2,800 members in California.

It is our information and understanding that the Board begins every meeting with an "invocation,"
which in practice amounts to a prayer. We understand these prayers are sectarian, include
Christian references, and end with "In Jesus' name, Amen." We further understand that there are
frequently children from around the district who attend these meetings for a district showcase.

It is beyond the scope of a public school board to schedule prayer as part of its scheduled
meetings. Federal courts have struck down school board practices that include this religious
ritual. *See Doe v. Indian River School District*, 653 F.3d 256 (3d Cir. 2011), *cert. denied*, 132 S.
Ct. 1097 (holding that prayer at school board meetings conveys message favoring religion); *Coles
v. Cleveland Bd. of Educ.*, 171 F.3d 369 (6th Cir. 1999) (finding that a school board's practice of
opening its meetings with prayers violated the Establishment Clause); *Doe v. Tangipahoa Parish
Sch. Bd.*, 473 F.3d 188 (5th Cir. 2006), *dismissed on other grounds*, 494 F.3d 494 (5th Cir. 2007)
(finding a school board's practice of opening meetings with sectarian prayer unconstitutional);
*Bacus v. Palo Verde Unified Sch. Dist.*, 52 Fed. Appx. 355, (9th Cir. Cal. 2002) (finding that a
school board violated the Establishment Clause in allowing prayers "in the name of Jesus").

The Supreme Court has continually and consistently struck down prayer by school officials in the
public schools. *See, e.g., Abington Township Sch. Dist. v. Schempp*, 374 U.S. 203 (1963)
(declaring as unconstitutional devotional Bible reading and recitation of the Lord's Prayer in
public schools); *Engel v. Vitale,* 370 U.S. 421 (1962) (declaring prayers in public schools
unconstitutional); *See also Lee v. Weisman*, 505 U.S. 577 (1992) (finding prayers at public high
school graduations an impermissible establishment of religion); *Wallace v. Jaffree,* 472 U.S. 38
(1985) (overturning law requiring daily "period of silence not to exceed one minute … for
meditation or daily prayer"); *Jager v. Douglas County Sch. Dist.*, 862 F.2d 825 (11th Cir. 1989),
*cert. denied*, 490 U.S. 1090 (1989) (holding unconstitutional pre-game invocations at high school
football games). In all of the aforementioned cases, the federal courts have struck down prayer in
the public school context because it constitutes a government endorsement of religion, which
violates the Establishment Clause of the First Amendment.

The Third Circuit Court of Appeals emphasized in *Doe v. Indian River School District* that school board prayer is analogous to other school prayer cases when it comes to protecting children from the coercion of school-sponsored prayer, which is heightened in the context of public schools. 653 F.3d at 275. In that case, the court also held that the school board meetings are "an atmosphere that contains many of the same indicia of coercion and involuntariness that the Supreme Court has recognized elsewhere in its school prayer jurisprudence." *Id.* In *Indian River School District*, the court's "decision [was] premised on careful consideration of the role of students at school boards, the purpose of the school board, and the principles underlying the Supreme Court's school prayer case law." *Id.* at 281. The final conclusion was that the school board prayer policy "[rose] above the level of interaction between church and state that the Establishment Clause permits." *Id.* at 290.

Certainly, a public school board is an essential part of the public school system. *See Coles v. Cleveland Bd. of Educ.*, 171 F.3d at 381 ("…the school board, unlike other public bodies, is an integral part of the public school system."). Public school boards exist to set policies, procedures, and standards for education within a community.

The issues discussed and decisions made at Board meetings are wholly school-related, affecting the daily lives of district students and parents. In striking down the board's prayers in *Coles*, the Sixth Circuit found prayers at school board meetings to be squarely within the context of school prayer cases. The court noted, "although meetings of the school board might be of a 'different variety' than other school-related activities, the fact remains that they are part of the same 'class' as those other activities in that they take place on school property and are inextricably intertwined with the public school system." *Id.* at 377. Therefore, prayer at public school board meetings is no different than a prayer given at other school district events and is unconstitutional.

Prayer at public school board meetings is unnecessary, inappropriate, and divisive. Calling upon Board members, as well as parents and students of the school, to pray is coercive, embarrassing, and beyond the scope of our secular school system. Board members are free to pray privately or to worship on their own time in their own way. The school board, however, ought not to lend its power and prestige to religion, amounting to a governmental endorsement of religion that excludes the one in five adult Americans and one in three young Americans who are now nonreligious.[1]

We ask that you take immediate action and refrain from scheduling prayers as part of future school board meetings. We further ask that you respond in writing with the steps you are taking to remedy this constitutional violation.

Sincerely,

Andrew L. Seidel
Staff Attorney

ALS:stg

---

[1] "Nones on the Rise: One-in-Five Adults Have No Religious Affiliation," Pew Research Center, The Pew Forum on Religion & Public Life (October 9, 2012) *available at* http://www.pewforum.org/Unaffiliated/nones-on-the-rise.aspx

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**EXHIBIT 6**

23

24

25

26

31

FIRST AMENDED COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

LAW OFFICES OF
**MARGARET A. CHIDESTER & ASSOCIATES**
17762 COWAN, FIRST FLOOR
IRVINE, CALIFORNIA 92614-6096

MARGARET A. CHIDESTER*
STEVEN R. CHIDESTER
LENA Y. SHIRAIWA
TIFFANY M. TRAN

October 7, 2013

TELEPHONE: (949) 474-5040

TELECOPIER: (949) 474-8540

m.chidester@californiaschoollaw.net

*A PROFESSIONAL CORPORATION

REF. OUR FILE

CHI-95.8

**VIA U.S. MAIL**

Freedom From Religion Foundation
P.O. Box 750
Madison, Wisconsin 53701

Attention:   Andrew L. Seidel, Esq.
             Staff Attorney

Re:    Your Correspondence of September 19, 2013 to
       Ms. Sylvia Orozco and the Board of Education of
       The Chino Valley Unified School District

Dear Mr. Seidel:

This office is general counsel to the Chino Valley Unified School District. The Superintendent and Board President Ms. Orozco have referred your correspondence to us for response. Your organization objects to the District's long-standing practice of offering the opportunity to community leaders of all faiths to offer a non-proselytizing invocation at the beginning of each School Board meeting. You state, "We understand these prayers are sectarian, include Christian references, and end with "In Jesus' name, Amen."

With the exception of one twelve year-old unpublished trial court case from the 9th Circuit, the authorities you rely upon for your conclusion that invocations at school board meetings are impermissible are from the 3rd Circuit, the 6th Circuit, and the 5th Circuit. None of these authorities binds the District. Further, you neglect the opinion of the United States Supreme Court in *Marsh V. Chambers* 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), which upheld the Nebraska Legislature's decades-old practice of opening each legislative day with a prayer delivered by a state-employed chaplain.

You may not be aware that the 9th Circuit Court of Appeals has recently revisited the issue of legislative prayer and upheld the practice. In *Rubin v. City of Lancaster* 710 F.3d 1087; 2013 U.S.App. LEXIS 6007; (2013), Plaintiff citizens challenged the practice of the City

Andrew L. Seidel, Esq.
October 7, 2013
Page 2

Council of Lancaster, California of opening meetings with privately led prayers, alleging that this caused an unconstitutional establishment of religion.

The City utilized a two step process to solicit volunteers. The City Clerk compiled and maintained a database of religious congregations with an established presence in the City. All such congregations were eligible to appear on the list, which does not probe the faith, denomination or other religious belief of a congregation.

The City then mailed each listed religious group an invitation to open a City Council meeting with an invocation, stating, "This opportunity is voluntary, and you are free to offer the invocation according to the dictates of your own conscience. To maintain a spirit of respect and ecumenism, the City Council requests that the prayer opportunity not be exploited as an effort to convert others ... nor to disparage any faith or belief different [from] that of the invocational speaker." The policy of the City Council expressly stated it was not the intent of the City to in any way affiliate the Council with, nor express the City Council's preference for any faith or religious denomination; rather, to acknowledge and express the City Council's respect for the diversity of religious denominations and faiths represented among its citizens. For this reason, the Council allowed each congregation a maximum of three non-consecutive invocations per year.

The *Lancaster* Court carefully examined the case law since the decision in *Marsh*, observing the Supreme Court declined to apply the *Lemon* test. It observed that the City had taken protective measures to assure inclusivity. Under the policy, the Clerk must make every reasonable effort to insure that a variety of eligible invocational speakers are scheduled, but in no event, may a speaker be scheduled to offer a prayer at consecutive meetings, or more than three meetings in any calendar year. The Clerk was directed to invite every local religious group that can be found, and to schedule appearances on a first-come, first-served or other random basis.

Plaintiffs complained that between the day the City ratified its policy and the day of the invocation objected to by Plaintiffs, twenty prayers were given by members of Christian denominations, each mentioning the name of Jesus, four were given by a self-identified "metaphysicist", one was given by a Sikh, and another by a Muslim. Plaintiffs argued that the City's facially neutral policy, it advanced Christianity because most of the volunteers so far had been Christian and had given Christian invocations. The court noted, "This argument misconceives the focus of our inquiry. Whatever the content of the prayers or the denomination of the prayer givers, the City chooses neither. That most so far have been Christian is merely a function of local demographics and the choices of the religious leaders who responded out of their own initiative to the City 's invitation."

Like your organization, the *Lancaster* plaintiffs objected because some prayers referred to "Jesus Christ". They sought a ban on prayers in the name of Jesus Christ or any other

LAW OFFICES OF
**MARGARET A. CHIDESTER & ASSOCIATES**

Andrew L. Seidel, Esq.
October 7, 2013
Page 3

religious figure. The *Lancaster* Court rejected this proposed restriction, as it would "assign to the government the task of co-authoring prayers." The Court determined that a state-imposed requirement that all legislative prayers be non-denominational begins to take the form of an official or civil religion, which could itself be a violation of the Establishment Clause.

## CONCLUSION

For many years, the District has, in an inclusive fashion very similar to the *Lancaster* facts, invited leaders of all faiths represented in the Chino community to participate in the invocation process. The Board of Education believes this inclusivity welcomes the diversity of our community, and does not place the imprimatur of the School Board on any particular religious faith.

We trust this information addresses your concern.

Very truly yours,

*Margaret a. Chidester*

Margaret A. Chidester

MAC:dg
cc:   Ms. Sylvia Orozco, Board President

Board of Education

Mr. Wayne Joseph, Superintendent