1  David J. Kaloyanides SBN 160368
   E: djpkaplc@me.com
2  DAVID J.P. KALOYANIDES
   A PROFESSIONAL LAW CORPORATION
3  15338 Central Avenue
   Chino, CA 91710
4  T: (213) 623-8120/F: (213) 402-6292

5  Andrew L. Seidel  (PHV)
   Rebecca Markert (PHV)
6  E: aseidel@ffrf.org/rmarkert@ffrf.org
   Freedom From Religion Foundation, Inc.
7  PO Box 750
   Madison, WI 53701
8  T: (608) 256-8900

9  Attorney for Plaintiffs
   Freedom From Religion Foundation, Inc.,
10 Michael Anderson, Larry Maldonado, and
   Does 1 through 20, inclusive

11
                   UNITED STATES DISTRICT COURT
12
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
13
                        EASTERN DIVISION
14

15 FREEDOM FROM RELIGION          )  Case No.: 5:14-CV-2336 JGB (DTBx)
   FOUNDATION, INC., et al.,      )
                                  )  PLAINTIFFS' MEMORANDUM OF
16                                )  POINTS AND AUTHORITIES IN
              Plaintiffs,         )  SUPPORT OF MOTION FOR
17     vs.                        )  SUMMARY JUDGMENT
                                  )
18 CHINO VALLEY UNIFIED           )
   SCHOOL DISTRICT BOARD OF       )
   EDUCATION, etc. et al,         )  Hearing Date:      October 26, 2015
19                                )  Hearing Time:      9:00 a.m.
                                  )  Courtroom:         1 Riverside
              Defendants.         )         Hon. Jesus G. Bernal
20

21

22

23

24                          _____
                                   i
25 PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
                OF MOTION FOR SUMMARY JUDGMENT
26

1    Plaintiffs Freedom From Religion Foundation, Inc., Michael Anderson, Larry

2    Maldonado, and DOES 1 through 20 inclusive, hereby submit this Memorandum of

3    Points and Authorities in Support of their Motion for Summary Judgment.

4

5                                    Respectfully submitted,

6

7    Dated: September 28, 2015    _____

8                                    David J. Kaloyanides

9                                    Andrew Seidel
                                     Rebecca Markert
                                     Freedom from Religion Foundation, Inc.
10
                                     Attorneys for Plaintiffs
11                                   Freedom From Religion Foundation,
                                     Inc., Michael Anderson, Larry
12                                   Maldonado, and Does 1-20 inclusive.

13

14

15

16

17

18

19

20

21

22

23

24
                                        ii
25    PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
                   OF MOTION FOR SUMMARY JUDGMENT
26

# TABLE OF CONTENT

I.   Introduction.................................................................................................1

II.  Argument ...................................................................................................3

   A.  The Plaintiffs are entitled to Summary Judgment.................................. 3

   B.  The Plaintiffs are entitled to Summary Judgment on their federal Establishment Clause claims ............................................................................... 4

      1.   School board meetings are school events and organized prayer at the meetings should be treated legally as such, as two Circuit courts have already held.................................................................................................. 4

      2.   No case has applied the *Marsh* exception to the school context; and every court applying *Marsh* has specifically distinguished prayers in the school context. ...................................................................................... 9

   C.  Because school boards do not meet the *Marsh* and *Galloway* exception to the First Amendment, their conduct are analyzed using the *Lemon* test................. 12

      1.   The prayers, proselytizing, and Bible readings have an obvious religious purpose and no legitimate secular purpose. .................................... 14

      2.   The prayers, proselytizing, and Bible readings endorse religion. ................. 16

   D.  The Undisputed facts support summary judgment in favor of plaintiffs on their California constitution claims as well. ................................................... 20

      1.   The Board's conduct violates the Establishment Clause of the California Constitution ................................................................................ 20

      2.   The Board's conduct violates California's No Preference Clause................. 22

      3.   The Board's conduct also violates California's No Aid Clause ................... 23

III. Conclusion.................................................................................25

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

### CASES

*Abington Sch. Dist. v. Schempp,*
  374 U.S. 203, 83 S.Ct. 1560 (1963)-------------------------------------------------4, 15

*Access Fund v. U.S. Dept. of Agriculture,*
  499 F.3d 1036 (9th Cir. 2007) ------------------------------------------------------14

*ACLU of Ohio Found. v. Ashbrook,*
  375 F.3d 484 (6th Cir. 2004);------------------------------------------------------10

*Albright v. Board of Educ. of Granite School Dist.,*
  765 F. Supp. 682 (D. Utah 1991)---------------------------------------------------13

*Am. Family Ass'n v. City & County of San Francisco,*
  277 F.3d 1114 (9th Cir. 2002) -----------------------------------------------------22

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 106 S.Ct. 2505 (1986) ----------------------------------------------- 3

*Atheists of Fla., Inc. v. City of Lakeland,*
  713 F.3d 577 (11th Cir. 2013) -----------------------------------------------------13

*Bacus v. Palo Verde Unified School Dist. Bd. of Educ.,*
  11 F.Supp.2d 1192 (C.D.Cal.1998) ------------------------------------------------- 5

*Bacus v. Palo Verde Unified School Dist. Bd. of Educ.,*
  52 Fed.Appx. 355 (9th Cir. 2002). ------------------------------------------------- 5

*Bats v. Cobb County,*
  410 F. Supp. 2d 1324 (N.D. Ga. 2006) ---------------------------------------------13

*Bennett v. Livermore Unified School District,*
  193 Cal.App.3d 1012, 238 Cal.Rptr. 819 (1987)------------------------------- 23, 24

*Blackwelder v. Safnauer,*
  689 F. Supp. 106 (N.D.N.Y 1988) -------------------------------------------------13

*Brandon v. Board,*
  635 F.2d 971 (2d Cir. 1980)--------------------------------------------------- 14, 17

*California Educational Facilities Authority v. Priest*
  12 Cal.3d 593, 116 Cal.Rptr. 361 (1974). ----------------------------------------24

iv

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

*Card v. City of Everett,*
520 F.3d 1009 (9th Cir. 2008) -------------------------------------------------13

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S.Ct. 2548 (1986).-------------------------------------- 3

*Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter,*
492 U.S. 573, 109 S.Ct. 3086 (1989) ----------------------------------10, 12, 16

*Cole v. Oroville Union High Sch.,*
228 F.3d 1092 (9th Cir. 2000) -------------------------------------------4, 14

*Coles ex rel. Coles v. Cleveland Bd. of Educ.,*
171 F.3d 369 (6th Cir. 1999)--------------------------------------------- passim

*Collins v. Chandler Unified Sch. Dist.,*
644 F.2d 759 (9th Cir. 1981) ---------------------------------------- 14, 17

*Doe v. Indian River Sch. Dist.,*
653 F.3d 256 (3d Cir. 2011)---------------------------------------------- passim

*Doe v. Santa Fe Independent Sch. Dist.,*
168 F.3d 806 (5th Cir. 1999)-------------------------------------------------14

*Edwards v. Aguillard,*
482 U.S. 578, 583 n.4, 107 S.Ct. 2573 (1987)------------------------- 10, 13

*Engel v. Vitale,*
370 U.S. 421, 82 S.Ct. 1261 (1962)-----------------------------------------4, 10

*Fox v. City of Los Angeles*
22 Cal.3d 792, 150 Cal.Rptr. 867 (1978)-----------------------------------24

*Glassroth v. Moore,*
229 F. Supp. 2d 1290 (M.D. Ala. 2002) -----------------------------------13

*Glassroth v. Moore,*
335 F.3d 1282 (11th Cir. 2003) ----------------------------------------------11

*Hewitt v. Joyner,*
940 F.2d 1561 (9th Cir. 1991) ----------------------------------------------22

*Illinois ex rel. McCollum v. Bd. of Ed.,*
333 U.S. 203, 68 S.Ct. 461 (1948) ------------------------------------------ 4

*Jager v. Douglas County Sch. Dist.,*

v

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

862 F.2d 824 (11th Cir.1989) -------------------------------------------11, 13, 15

*Jewish War Veterans v. U.S.*, 6
95 F. Supp. 3 (D.D.C. 1988) -------------------------------------------------13

*Johnson v. Poway Unified Sch. Dist.*,
658 F.3d 954 (9th Cir. 2011)-------------------------------------------4, 11, 12, 13

*Joyner v. Forsyth County*,
653 F.3d 341 (4th Cir. 2011) ----------------------------------------------13

*Katcoff v. Marsh*,
755 F.2d 223 (2d Cir. 1985)------------------------------------------------13

*Kreisner v. City of San Diego*,
1 F.3d 775 (9th Cir. 1993)-------------------------------------------------16

*Lassonde v. Pleasanton Unified Sch. Dist.*,
320 F.3d 979 (2003)------------------------------------------------------- 4

*Lee v. Weisman*,
505 U.S. 577, 112 S.Ct. 2649 (1992) ------------------------------------- passim

*Lundberg v. West Monona Community School Dist.*,
731 F. Supp. 331 (N.D. Iowa 1989)--------------------------------------13

*Lynch v. Donnelly*,
465 U.S. 668, 104 S.Ct. 1355 (1984) -------------------------------15, 16, 18

*Marsh v. Chambers*,
463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983)---------------------- passim

*Mellen v. Bunting*,
327 F.3d 355, 369-70 (4th Cir. 2003 -------------------------------------11

*Metzl v. Leininger*,
850 F. Supp. 740 (N.D. Ill. 1994) ---------------------------------------13

*Murphy v. Bilbray*,
782 F. Supp. 1420 (S.D. Cal. 1991)--------------------------------------22

*Paulson v. City of San Diego*,
294 F.3d 1124 (9th Cir. 2002) ------------------------------------- 23, 24

*Pelphrey v. Cobb County*,
547 F.3d 1263 (11th Cir. 2008)-----------------------------------------13

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

*Rubin v. City of Lancaster,*
   710 F.3d 1087 (9th Cir. 2013) --------------------------------------------------------------11

*Sands v. Morongo Unified School District,*
   53 Cal.3d 863, 281 Cal.Rptr. 34  (1991)-------------------------------------- 21, 22

*Santa Fe Indep. Sch. Dist. v. Doe,*
   530 U.S. 290, 120 S.Ct. 2266 (2000) --------------------------------------4, 14, 15, 16

*Santa Monica Nativity Scenes Comm. v. City of Santa Monica,*
   784 F.3d 1286 (9th Cir. 2015) --------------------------------------------------------12

*Sedlock v. Baird,*
   235 Cal. App. 4th 874, 185 Cal. Rptr. 3d 739 (2015)--------------------------------21

*Texas Monthly, Inc. v. Bullock,*
   489 U.S. 1, 109 S.Ct. 890 (1989). --------------------------------------------------16

*Town of Greece, N.Y. v. Galloway,*
   134 S.Ct. 1811, 188 L.Ed.2d 835 (2014) -------------------------------- 9, 10, 11

*Trunk v. City of San Diego,*
   629 F.3d 1099 (9th Cir. 2011) -------------------------------------------------- 14, 16

*Vernon v. City of Los Angeles,*
   27 F.3d 1385 (9th Cir.1994)-----------------------------------------------------------16

*Warner v. Orange Cnty. Dept.of Probation,*
   115 F.3d 1068 (2d Cir. 1996) ------------------------------------------------------10

*Weisman v. Lee,*
   908 F.2d 1090 (1st Cir. 1990)----------------------------------------------------------13

*Westside Comm. Bd. of Educ. v. Mergens,*
   496 U.S. 226, 110 S.Ct. 2356 (1990) ----------------------------------------------17

### RULES

FED. R. CIV. P. 56(e)---------------------------------------------------------------- 3

FED.R.CIV. P. 56(c). ---------------------------------------------------------------- 3

### CONSTITUTIONAL PROVISIONS

Cal. Const., Art. XVI, §5 ----------------------------------------------------------23

vii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

There is no dispute as to any material fact at issue in this case. The only question is what is the legal effect of the religious conduct of the Chino Valley Unified School District Board of Education (the "Board") acting through the elected members of the Board during the Board meetings. In other words, the only question to resolve is whether the opening of the Board meetings with prayer (predominantly Christian prayer), the reading and reciting of passages from the Christian Bible by Board members during Board meetings, the proselytizing by Board members through religious comments and commentary during Board meetings, violate the constitutional rights of the Plaintiffs. The Plaintiffs refer to and incorporate herein by reference the undisputed material facts and corresponding citations to the record set forth in the Statement of Uncontroverted Facts and Conclusions of Law (hereinafter "SUF").

The uncontroverted facts show that the Board had a regular practice of beginning each Board meeting with a prayer. (SUF Nos. 6, 26, 30, 33, 38-39, 42, 45, 50, 53, 56, 59, 63, 66, 73, 75, 77, 80, 84, 86, 88, 90-91, 93-100, 102). The Board enacted Board Resolution 2013/2014-11 on October 17, 2013 to make these prayers an official part of the Board meetings. (SUF No. 4). The intent of the Resolution, by its very terms, and in practice, is to promote religious prayer as part of the Board Meetings to the exclusion of non-religious and secular means of solemnizing the meetings. The invitation to the community to participate in the prayer is directed solely to religious organizations and religious leaders (predominantly Christian) to the exclusion of secular organizations or non-religious organizations. (SUF No. 5). Board members themselves conducted the prayers at times. (SUF Nos. 38, 42, 73, 84, 97) In

1

addition, Board members regularly recite and read passages from the Christian Bible, usually the New Testament, (SUF Nos. 31, 34-37, 40, 43, 48, 51, 55, 57, 60-61, 67, 70, 76, 78, 81, 85, 89) as well as engaging in religious comments promoting Christian beliefs and expressly encouraging those in attendance to accept and adopt such beliefs—in other words, proselytizing. (SUF Nos. 32 35, 36, 37, 41, 43-44, 46-47, 49, 51-52, 54, 58, 62, 65, 69, 70-72, 74, 79, 81-83, 87, 92, 103-106). Moreover, the uncontroverted facts show that the Board includes a student member, that students attend the Board's meetings, and that in order for students to participate in recognition, awards, and other honors for their school activities, they must attend the Board meetings. (SUF Nos. 15, 17-21, 26-29).

The Board controls and governs the schools in the District. (SUF No. 1). The Board's meetings are part of its functions and process for conducting the business of the schools in the District. There is little to distinguish the Board's meetings from a school function. There is nothing that sets the Board meetings apart from the school context. The conduct of the Board during its meetings should be analyzed as any other school event.

Without any dispute as to the material facts in this case, the Court can answer the only issue in the case: has the Board violated the Establishment Clause of the First Amendment to the United States Constitution, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Establishment, No Aid and No Preference clauses of the California state Constitution, and California's civil rights statute codified in California Civil Code §52.1? Based on the uncontroverted facts here, the answer to all is yes.

_____
2

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

II.  ARGUMENT

A.  THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT

The Plaintiffs are entitled to the entry of summary judgment in their favor because, as demonstrated by the pleadings and evidence on the record, there is no genuine issue of material fact and the Plaintiffs are entitled to judgment as a matter of law. FED.R.CIV. P. 56(c). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Summary judgment does not require an absolute absence of any factual dispute between the parties. *Id*. at 247-48. The party moving for summary judgment bears the initial burden of offering proof of the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). If the moving party satisfies its initial burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting FED. R. CIV. P. 56(e)). The declarations of the Plaintiffs as to the facts about the Defendants' conduct at issue, as do public records (in the form of videos of the relevant Board of Education board meetings, published Minutes of those meetings, and published Board of Education Resolutions) of which the Court may take judicial notice. Given these established facts, judgment as a matter of law is appropriate because they sufficiently show that the Defendant Board's conduct violates the Establishment Clause and the religion clauses of the California Constitution, *infra*.

3

### B.  THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FEDERAL ESTABLISHMENT CLAUSE CLAIMS

The Supreme Court has consistently struck down government organized prayers, bible readings, and proselytizing in the school context for more than 65 years. *Illinois ex rel. McCollum v. Bd. of Ed.,* 333 U.S. 203, 211, 68 S.Ct. 461 (1948); *see also Engel v. Vitale*, 370 U.S. 421, 424, 82 S.Ct. 1261 (1962); *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 223, 83 S.Ct. 1560 (1963); *Lee v. Weisman*, 505 U.S. 577, 589, 112 S.Ct. 2649 (1992); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 310, 120 S.Ct. 2266 (2000).  The Ninth Circuit has halted proselytizing at school events too. *Cole v. Oroville Union High Sch*., 228 F.3d 1092, 1101 (9th Cir. 2000) ("the District's refusal to allow the students to deliver a sectarian speech or prayer as part of the graduation was necessary to avoid violating the Establishment Clause," and finding that "proselytizing, no less than prayer, is a religious practice."); *Lassonde v. Pleasanton Unified Sch. Dist*., 320 F.3d 979, 984 (2003) (same); *see also*, *Johnson v. Poway Unified Sch. Dist.,* 658 F.3d 954, 969 (9th Cir. 2011) (in classroom). These holdings did not turn on the language of a prayer policy, whether or not the prayers were sectarian, or who gave the prayers.  No facts altered the unconstitutionality of government organized religious rituals in the public school setting.

As an initial matter, however, the Court must determine whether or not the Defendants' conduct occurred and continues to occur in the school context. In other words, the Court must determine if the School District's Board of Education board meetings fall within the context of schools generally. Clearly it does.

1. School board meetings are school events and organized prayer at the meetings should be treated legally as such, as two Circuit courts have already held.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    "This case puts the court squarely between the proverbial rock and a hard place.

2    The rock is *Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992),

3    holding that opening prayers at high school graduation ceremonies violate the

4    Establishment Clause of the First Amendment. The hard place is *Marsh v. Chambers*,

5    463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983), ruling that opening prayers are

6    constitutionally permissible at sessions of a state legislature." *Coles ex rel. Coles v.*

7    *Cleveland Bd. of Educ.*, 171 F.3d 369, 371 (6th Cir. 1999). The only two Federal

8    Circuit courts to address this precise issue both held that school boards are "closer to

9    the rock than to the hard place." *Id.*[1]

10   In *Coles*, the Sixth Circuit found the Cleveland school board's prayers violated

11   the Establishment Clause. *Id.* at 385. In *Doe v. Indian River Sch. Dist.*, 653 F.3d 256

12   (3d Cir. 2011), the Third Circuit agreed with Coles and held "the Indian River School

13   Board Prayer Policy rises above the level of interaction between church and state that

14   the Establishment Clause permits." *Id*. at 290. These two cases are directly on point

15   and were decided *after* the Supreme Court approved legislative prayer in *Marsh v.*

16   *Chambers,* 463 U.S. 783, 103 S.Ct. 3330 (1983). But in this case, the additional

17

18

19   _____

20   [1] The only case in the Ninth Circuit that addressed this question under similar facts is
     the <u>unpublished</u> opinion of *Bacus v. Palo Verde Unified School Dist. Bd. of Educ.*, 52

21   Fed.Appx. 355 (9th Cir. 2002). In that case, the Ninth Circuit overturned the decision
     of the district court which found that opening a school board meeting with prayer was

22   permissible. *See Bacus v. Palo Verde Unified School Dist. Bd. of Educ.*, 11 F.Supp.2d
     1192 (C.D.Cal.1998). The district court determined under the facts of the case that the

23   *Marsh* analysis should be used instead of the *Lemon* and *Weisman* tests. *Id*. at 1196.
     The Circuit reversed the district court's decision. While the district court decision

24   remains published, the Circuit opinion was not certified for publication. No other
     Ninth Circuit authority has been uncovered that addresses the very specific issue here.

5

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

25

26

1  conduct by Defendants in proselytizing and regularly reading passages from the Bible

2  during Board meetings makes the circumstances here more egregious.

3      This Court should do as the Third and Sixth Circuit Courts of Appeals did, and

4  focus its initial inquiry on whether the school board's prayer practices should be

5  analyzed under the limited exception *Marsh* carved out, or under other jurisprudence

6  involving school-sponsored religion. Both courts found *Marsh* too narrow and

7  inapplicable to the school board setting. Both courts applied the *Lee v. Weisman* line of

8  cases and found the school boards' prayer practices unconstitutional.

9      *Coles* and *Indian River* examined the factual context of the board meetings to

10  determine which line of cases should apply. Perhaps the most important fact was the

11  purpose of the school boards. The Sixth Circuit held that "the fact that school board

12  meetings are an integral component of the Cleveland public school system serves to

13  remove it from the logic in *Marsh* and to place it squarely within the history and

14  precedent concerning the school prayer line of cases." *Coles*, *supra*, 171 F.3d at 381.

15  The Third Circuit agreed, "regardless of whether the Board is a 'deliberative or

16  legislative body,' we conclude that *Marsh* is ill-suited to this context because the entire

17  purpose and structure of the Indian River School Board revolves around public school

18  education." *Indian* River, *supra*, 653 F.3d at 278.

19      The "realities" of school board meetings dictated the holding: "These meetings

20  are conducted on school property by school officials, and are attended by students who

21  actively and regularly participate in the discussions of school-related matters." *Coles*,

22  *supra*, 171 F.3d at 381.

23

24

25  PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

26

6

1    The realities that controlled those two cases exist here. In fact, the families and

2    Board agree that many of the facts here are *identical* to those upon which the Third and

3    Sixth Circuits relied in their analysis:

4    • The Board is the governing board of the School District.[2]

5    • "These public meetings usually take place on school property—either in the

6       school board's administration building or in a schoolhouse."[3]

7    • The Board retains control over the meeting by setting "the agenda and the

8       schedule."[4]

9    • "The Board deals with student disciplinary actions at the closed-door portion of

10      its public meetings," and that "students facing disciplinary action for serious

11      offenses are permitted to speak with the Board directly in connection with their

12      situation."[5]

13   • "The Student Representative directly represents student interests at the Board's

14      meeting. The meeting gives student representatives—and therefore all the

15

16   _____

17   [2] SUF No. 1. *Doe v. Indian River Sch. Dist.*, 653 F.3d 256, 279 (3d Cir. 2011); *see also Coles ex rel. Coles v. Cleveland Bd. of Educ.*, 171 F.3d 369, 381 (6th Cir. 1999)

18   ("What actually occurs at the school board's meetings is what sets it apart from the deliberative processes of other legislative bodies.  Simply stated, the fact that the function of the school board is uniquely directed toward school-related matters gives it

19   a different type of "constituency" than those of other legislative bodies—namely, students.").

20   [3] SUF Nos. 22-23, 64, 68; *Indian River*, *supra*, 653 F.3d at 278; *Coles*, *supra*, 171 F.3d *at* 386 (noting importance of government control over content).

21   [4] SUF Nos. 6, 24, 25.  *See Indian River*, *supra*, 653 F.3d at 278, *citing Lee v. Weisman*, 505 U.S. at 597, 112 S.Ct. 2649 (1992)("At a high school graduation, teachers and

22   principals must and do retain a high degree of control over the precise contents of the program, the speeches, the timing, the movements, the dress, and the decorum of the

23   students.").

24   [5] SUF No. 108; *See Indian River*, *supra,* 653 F.3d at 264; *Coles*, *supra*, 171 F.3d at 383.

7

25   PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
     OF MOTION FOR SUMMARY JUDGMENT

26

1    students—an opportunity to draw attention to issues that affect their educational

2    experience."[6]

3    These facts dictated that school board prayer be analyzed as school prayer.

4    Both *Coles* and *Indian River* placed significant emphasis on students attending

5    and participating in meetings, whether or not the Board characterized it as voluntary.

6    (Voluntariness was irrelevant because the Boards prayed "in an atmosphere that

7    contains many of the same indicia of coercion and involuntariness that the Supreme

8    Court has recognized elsewhere in its school prayer jurisprudence.") *Indian River*,

9    *supra*, 653 F.3d at 275. *Indian River* recognized six ways students participate in board

10   meetings: (1) student disciplinary action, (2) JROTC students presenting colors, (3)

11   student representatives sitting as Board members, (4) students performing for the

12   Board's benefit, (5) the Board recognizing student achievements, and (6) students

13   making public comments.  Each of these has occurred or regularly occurs at CVUSD

14   meetings, in addition to other student participation such as reciting the pledge. *Id.* at

15   264-65.[7]

16   As these cases show, the issue is not whether the Board is a deliberative body or

17   is fulfilling legislative functions; the issue is whether the factual reality of Board

18   meetings puts it in the same class as other school events. "Although meetings of the

19   _____

20   [6] SUF Nos. 20, 28. *See* Indian River, *supra*, 653 F.3d at 277; *Coles*, *supra*, 171 F.3d at 372.

21   [7] Defendant Board handles student disciplinary matters at Board meetings. SUF No. 108. JROTC has presented the colors at Defendant Board meetings. SUF No. 109.

22   Defendant Board has a Student Representative Board member. SUF Nos. 20 & 28.
     Defendant Board recognizes and presents awards to students at meetings. SUF No. 18.

23   Students perform for Defendant Board at Board meetings. SUF Nos. 17, 26, & 27.
     Students make public comments at Defendant Board meetings. SUF No. 19. Students

24   have led the pledge of allegiance at Defendant Board meetings. SUF No. 21.

                                        8
25   PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
                 OF MOTION FOR SUMMARY JUDGMENT

26

school board might be of a 'different variety' than other school-related activities, the fact remains that they are part of the same 'class' as those other activities in that they take place on school property and are inextricably intertwined with the public school system. Moreover, there is no question that the Establishment Clause jurisprudence controls this case." *Coles*, *supra*, 171 F.3d at 377.

2.  No case has applied the *Marsh* exception to the school context; and every court applying *Marsh* has specifically distinguished prayers in the school context.

*Coles* and *Indian River* were decided after *Marsh*, and *Town of Greece, N.Y. v. Galloway*, 134 S.Ct. 1811, 188 L.Ed.2d 835 (2014) overturned neither. The Third and Sixth circuits explicitly decided that *Marsh* did not apply to school board prayer. They did so partly because the Supreme Court has distinguished the two cases that allow legislative prayer—*Marsh* and *Galloway*—from the school context:

> Inherent differences between the public school system and a session of a
> state legislature distinguish this case from *Marsh v. Chambers*.  The
> considerations we have raised in objection to the invocation and
> benediction are in many respects similar to the arguments we considered
> in *Marsh*. But there are also obvious differences. The atmosphere at the
> opening of a session of a state legislature … cannot compare with the
> constraining potential of the one school event most important for the
> student to attend. … The *Marsh* majority in fact gave specific
> recognition to this distinction and placed particular reliance on it in
> upholding the prayers at issue there. *Lee*, supra, 505 U.S. at 596-97
> (citations omitted).

9

1    The distinction was not only explicit, but a requirement. *Id. at* 597 (noting that

2    our "decisions in *Engel v. Vitale* and *Schempp*, **require** us to distinguish the public

3    school context.") (emphasis added).

4    When the Supreme Court recently reaffirmed *Marsh* in *Galloway*, it again

5    distinguished the decisions from the school prayer context:

6    This case can be distinguished from the conclusions and holding of *Lee*

7    *v. Weisman*. There the Court found that, in the context of a graduation

8    where school authorities maintained close supervision over the conduct

9    of the students and the substance of the ceremony, a religious invocation

10   was coercive as to an objecting student. *Id.,* at 592–594; *see also Santa*

11   *Fe Independent School Dist.,* 530 U.S., at 312. Four Justices dissented in

12   *Lee,* but the circumstances the Court confronted there are not present in

13   this case and do not control its outcome.

14   *Galloway*, *supra*, 134 S. Ct. at 1827 (emphasis added).

15   The circumstances that controlled *Lee* (and *Coles* and *Indian River*) did not

16   exist in *Galloway*. But those very circumstances are present here.

17   Though *Galloway* reaffirmed *Marsh*, the Supreme Court and Federal Circuits

18   have never applied the *Marsh* rationale to public schools. *See, e.g., Lee*, *supra*,  505

19   U.S. at 596-97; *Cnty. of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S.

20   573, 602-05, 109 S.Ct. 3086 (1989); *Edwards v. Aguillard*, 482 U.S. 578, 583 n.4, 107

21   S.Ct. 2573 (1987); *Warner v. Orange Cnty. Dept.of Probation*, 115 F.3d 1068, 1076

22   (2d Cir. 1996), *reaffirmed after vacatur and remand*, 173 F.3d 120 (2d Cir. 1999);

23   *ACLU of Ohio Found. v. Ashbrook*, 375 F.3d 484, 494-95 (6th Cir. 2004); *Glassroth v.*

24

25   PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
     OF MOTION FOR SUMMARY JUDGMENT

26

1   *Moore*, 335 F.3d 1282, 1297-1298 (11th Cir. 2003); *Mellen v. Bunting*, 327 F.3d 355,

2   369-70 (4th Cir. 2003); *Jager v. Douglas County Sch. Dist.,* 862 F.2d 824, 828-29

3   (11th Cir.1989).

4         The Ninth Circuit's *Marsh*-affirming decision, *Rubin v. City of Lancaster*, 710

5   F.3d 1087 (9th Cir. 2013), also distinguished the school context, reiterating the

6   "inherent differences between the public school system and a session of a state

7   legislature." *Id*. at 1096 n.8 (*citing Lee*, 505 U.S. at 596–97).

8         In sum, *Galloway*, *Marsh*, and *Rubin* all agree that prayers occurring in a school

9   context should be treated differently.

10        Courts are more sensitive to Establishment Clause violations in the school

11  context. The Supreme Court has repeatedly held that "there are heightened concerns

12  with protecting freedom of conscience from subtle coercive pressure in the elementary

13  and secondary public schools." *Lee*, *supra,* 505 U.S. at 592. *See also Johnson*, *supra*,

14  658 F.3d at 972 (*citing Edwards*, 482 U.S. at 583–84) ("The Court has been

15  particularly vigilant in monitoring compliance with the Establishment Clause in

16  elementary and secondary schools."). The constitutional concern "may not be limited

17  to the context of schools, but it is most pronounced there." *Lee, supra*, 505 U.S. at 592

18  (*citing Allegheny,* 492 U.S. at 661 (Kennedy, J., concurring in judgment in part and

19  dissenting in part)) (emphasis added).

20        Coercion, which certainly exists here, was not a factor in *Marsh* or *Galloway*.

21  But *Galloway* noted that *if* "prayer is alleged to be a means to coerce or intimidate

22  others, the objection can be addressed…" *Galloway*, *supra*, 134 S. Ct. at 1826.

23

24
_____11_____
25  PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

26

Thus, whether prayer takes place in the "school context" is of primary importance, as the Ninth Circuit has reiterated. *Johnson, supra* 658 F.3d at 972 ("Context is critical when evaluating the government's conduct" under the Establishment Clause). *Coles, Indian River*, and these facts show that Chino Valley School Board meetings fall squarely in the school context.

### C. BECAUSE SCHOOL BOARDS DO NOT MEET THE *MARSH* AND *GALLOWAY* EXCEPTION TO THE FIRST AMENDMENT, THEIR CONDUCT ARE ANALYZED USING THE *LEMON* TEST.

To determine if the government has violated the Establishment Clause, courts "continue to apply the three-factor test set forth in *Lemon*. Despite recent criticism of the Lemon test, it remains the analysis for the Court to use in Establishment Clause cases.

As a mode of analysis for Establishment Clause inquiries, *Lemon* has been much criticized both inside and outside the Court—and sometimes ignored by the Court altogether, *see, e.g., Town of Greece v. Galloway,* –— U.S. ——, 134 S.Ct. 1811, 188 L.Ed.2d 835 (2014). Nevertheless, *Lemon* remains the Court's principal framework for applying the Establishment Clause.

*Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1299 n.7 (9th Cir. 2015) (citing *Cnty. of Allegheny v. ACLU,* 492 U.S. 573, 592, 109

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1   S.Ct. 3086, 106 L.Ed.2d 472 (1989) ("[Lemon's] trilogy of tests has been applied

2   regularly in the Court's later Establishment Clause cases."))[8]

3       'Under *Lemon*, a government act is consistent with the Establishment Clause if

4   it: (1) has a secular purpose; (2) has a principal or primary effect that neither advances

5   nor disapproves of religion; and (3) does not foster excessive governmental

6   entanglement with religion.'" *Johnson, supra,* 658 F.3d at 972. The Ninth Circuit has

7   _____

8   [8] *See also Edwards v. Aguillard*, 482 U.S. 578, 583 n.4, 107 S.Ct. 2573 (1987) ("The Lemon test has been applied in all cases since its adoption in 1971, except in *Marsh*");

9   *Atheists of Fla., Inc. v. City of Lakeland*, 713 F.3d 577, 590 (11th Cir. 2013) (the "Supreme Court has not extended the *Marsh* exception"); *Joyner v. Forsyth County*,

10   653 F.3d 341, 349 (4th Cir. 2011) ("'the exception created by *Marsh* is limited'") (citation omitted); *Pelphrey v. Cobb County*, 547 F.3d 1263, 1276 (11th Cir. 2008)

11   ("the Supreme Court has never expanded the *Marsh* exception"); *Coles, supra*, 171 F.3d at 376 ("the unique and narrow exception articulated in *Marsh*"); *Jager v.*

12   *Douglas County Sch. Dist.*, 862 F.2d 824, 829 n.9 (11th Cir. 1989) ("*Marsh* created an exception to the Lemon test only for such historical practice."); *Katcoff v. Marsh*, 755

13   F.2d 223, 232 (2d Cir. 1985) (referring to *Marsh* as an "exception" to Lemon); *Weisman v. Lee*, 908 F.2d 1090, 1094-96 (1st Cir. 1990) (Bownes, J., concurring)

14   (twice referring to "the exception to [*Lemon*] delineated in *Marsh*"); *Bats v. Cobb County*, 410 F. Supp. 2d 1324, 1328 (N.D. Ga. 2006) (Marsh is an "exception");

15   *Glassroth v. Moore*, 229 F. Supp. 2d 1290, 1306 (M.D. Ala. 2002) (same); *Metzl v. Leininger*, 850 F. Supp. 740, 744 (N.D. Ill. 1994) (referring to the "*Marsh* court's

16   narrow 'historical exception' to traditional Establishment Clause jurisprudence"); *Albright v. Board of Educ. of Granite School Dist.*, 765 F. Supp. 682, 689 (D. Utah

17   1991) (*Marsh* is an "exception"); *Lundberg v. West Monona Community School Dist.*, 731 F. Supp. 331, 346 (N.D. Iowa 1989) (explaining that the plaintiffs sought to

18   "escape the *Lemon* test by invoking the *Marsh* exception" and concluding that "the *Marsh* exception is not controlling."); *Jewish War Veterans v. U.S.*, 695 F. Supp. 3, 11

19   n.4 (D.D.C. 1988) ("[T]he Supreme Court has applied the Lemon framework in all but one establishment clause case. The exception was *Marsh v. Chambers,* 463 U.S. 783,

20   103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983)..."); *Blackwelder v. Safnauer*, 689 F. Supp. 106, 142 n.38 (N.D.N.Y 1988) (the "*Lemon* test has been applied by the Supreme

21   Court in all cases subsequent to its formulation with one exception. In *Marsh* . . . the Court carved out a narrow exception to the prohibitions of the establishment clause");

22   *Card v. City of Everett*, 520 F.3d 1009, 1014 (9th Cir. 2008) ("*Marsh* . . . should be construed as carving out an exception to normal Establishment Clause jurisprudence")

23   (internal quotation omitted); cf. *Marsh*, 463 U.S. 783, 796,103 S.Ct. 3330 (1983) (Brennan, J., dissenting) ("the Court is carving out an exception to the Establishment

24   Clause").

25
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

26

"collapsed these last two prongs to ask 'whether the challenged governmental practice has the effect of endorsing religion.'" *Id.* (citing *Trunk v. City of San Diego*, 629 F.3d 1099, 1106 (9th Cir. 2011) (quoting *Access Fund v. U.S. Dept. of Agriculture*, 499 F.3d 1036, 1043 (9th Cir. 2007))). If the government action fails any prong it is unconstitutional. Here, Defendants fail all three.

1. <u>The prayers, proselytizing, and Bible readings have an obvious religious purpose and no legitimate secular purpose.</u>

The purpose behind hosting prayers, reading from the bible, and proselytizing is, as Mr. Na stated at one meeting, to "urge[] everyone who does not know Jesus Christ to go and find Him."[9] Sectarian and proselytizing prayers "by definition, are designed to reflect, and even convert others to, a particular religious viewpoint and … do not serve (and even run counter to) the permissible secular purpose of solemnizing an event." *Doe v. Santa Fe Independent Sch. Dist.*, 168 F.3d 806, 817-18 (5th Cir. 1999). The purpose is to use a public office serving all citizens, to promote that particular officeholder's personal religion. This is not a legitimate secular purpose. *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 762 (9th Cir. 1981) (citing *Brandon v. Board*, 635 F.2d 971, 978 (2d Cir. 1980)).

The Ninth Circuit has said that merely having a school invocation policy shows an impermissible religious purpose: "an invocation policy by its very terms appears to reflect an impermissible state purpose to encourage a religious message." *Cole*, *supra*, 228 F.3d at 1102-1103 (citing *Santa Fe*, *supra*, 530 U.S. at 291).

---

[9] SUF No. 49.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

1    Finally, even if solemnization is a legitimate secular purpose, it fails for two

2 reasons.  First, religion only solemnizes events for its adherents. It tells "nonadherents

3 'that they are outsiders, not full members of the political community and

4 accompanying message to adherents that they are insiders, favored members of the

5 political community.'" *Santa Fe*, supra, 530 U.S. at 309-10 (quoting *Lynch v.*

6 *Donnelly*, 465 U.S. 668, 688 104 S.Ct. 1355 (1984) (O'Connor, J., concurring).

7 Second, there are many nonreligious ways to solemnize a school event and the "the

8 state cannot employ a religious means to serve otherwise legitimate secular interests."

9 *Jager, supra*, 862 F.2d at 830. There are plenty of secular alternatives: "The board

10 could have used the inspirational words of Abraham Lincoln or … Dr. Martin Luther

11 King, Jr. to achieve the same ends. Instead, the board relied upon the intrinsically

12 religious practice of prayer to achieve its stated secular end." *Coles*, 171 F.3d at 384.

13 Because "solemnization … could have been achieved without resort to prayer, … the

14 school board's practice fails to satisfy the purpose prong of the *Lemon* test." *Id*.

15    Bible reading and proselytizing have a similarly religious purpose.  When it

16 struck down Bible reading in public schools more than fifty years ago, the Court

17 wrote, "the place of the Bible as an instrument of religion cannot be gainsaid."

18 *Schempp*, *supra*, 374 U.S. at 224.  Nor can it.  The Bible is a religious book and Board

19 members read from it to publicize their personal religion.

20    The Establishment Clause also prohibits government proselytizing. The secular

21 purpose prong means "not only that government may not be overtly hostile to religion

22 but also that it may not place its prestige, coercive authority, or resources behind a

23 single religious faith or behind religious belief in general, compelling nonadherents to

24

25    <u>15</u>
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT

26

1  support the practices or proselytizing of favored religious organizations." *Texas*

2  *Monthly, Inc. v. Bullock*, 489 U.S. 1, 9, 109 S.Ct. 890 (1989).

3           2.   The prayers, proselytizing, and Bible readings endorse religion.

4       The *Lemon* effects prong question is "whether 'it would be objectively

5  reasonable for the government action to be construed as sending primarily a message

6  of either endorsement or disapproval of religion.'" *Trunk v. City of San Diego*, 629

7  F.3d 1099, 1109 (9th Cir. 2011) (citing *Vernon v. City of Los Angeles*, 27 F.3d 1385,

8  1398 (9th Cir.1994)). Endorsement concerns "those acts that send the stigmatic

9  message to non-adherents " 'that they are outsiders, not full members of the political

10  community, and an accompanying message to adherents that they are insiders, favored

11  members....' " *Id*. at 1109 (citing *Santa Fe*, *supra*, 530 U.S. at 309-10 (quoting *Lynch*,

12  *supra*, 465 U.S. at 688, (O'Connor, J., concurring))). Plaintiffs—and apparently the

13  Chino Valley community—have received this message.  The endorsement inquiry is

14  conducted from the perspective of an "informed as well as reasonable" observer who is

15  "familiar with the history of the government practice at issue." *Kreisner v. City of San*

16  *Diego*, 1 F.3d 775, 784 (9th Cir. 1993)  In Establishment Clause claims involving

17  government speech—as when government officials, in their official capacity, at a

18  government meeting on government property, speak from their raised dais—the

19  *appearance* of endorsement is enough to violate the clause. *Allegheny County*, *supra*,

20  492 U.S. at 594 (the Establishment Clause "at the very least, prohibits government

21  from *appearing to take a position* on questions of religious belief"); *Lynch*, *supra*, 465

22  U.S. at 692 (O'Connor, J., concurring) (It is those practices that communicate an

23  endorsement of religion "whether intentionally or unintentionally, that make religion

24

                                    16
25  PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
                OF MOTION FOR SUMMARY JUDGMENT

26

1    relevant, *in reality or public perception*, to status in the political community."); *Id*. at

2    711 (Brennan, J., dissenting) ("But when officials participate in *or appear to endorse*

3    the distinctively religious elements of this otherwise secular event, they encroach upon

4    First Amendment freedoms."); *Westside Comm. Bd. of Educ. v. Mergens*, 496 U.S.

5    226, 264, 110 S.Ct. 2356 (1990) (Marshall, J., concurring) ("If public schools *are*

6    *perceived as conferring* the imprimatur of the State on religious doctrine or practice"

7    they run "afoul of the Establishment Clause."); *Widmar v. Vincent*, 454 U.S. 263, 280-

8    81, 102 S.Ct. 269 (Stevens, J., concurring) ("the record discloses no danger that the

9    University *will appear to sponsor* any particular religion") (emphasis added

10   throughout).  The Board's religious activities not only appear to endorse Christianity,

11   but actually endorse it, as the community reaction shows.

12          In *Indian River*, the court found that prayers and the prayer policy failed the

13   endorsement test. *See, Indian River, supra*, 653 F.3d at 290. The Ninth Circuit has

14   examined school prayers and found them to unconstitutionally endorse religion.

15   *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 762 (9th Cir. 1981). To a

16   reasonable observer or "an impressionable student, even the mere appearance of

17   secular involvement in religious activities might indicate that the state has placed its

18   imprimatur on a particular religious creed. This symbolic inference is too dangerous to

19   permit." *Id*. at 762 (quoting *Brandon v. Board of Ed. of Guilderland Central Sch. Dist.*,

20   635 F.2d 971, 978 (2d Cir. 1980). And in the context of a school board, which governs

21   and manages all aspects of public school life, the danger is so much the greater.

22

23

24
                                                17
25   PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
                OF MOTION FOR SUMMARY JUDGMENT
26

When an elected public school board official, at a public school board meeting, to rise in his official capacity, and read from his holy book,[10] tell everyone how they need God and should follow Jesus Christ,[11] or explain to citizens that a tragedy tells us "how much we need God in today's society [and] thank God for sending his son Jesus Christ so that our sins are forgiven and may have eternal life in heaven,"[12] he is endorsing religion. Defendants are using the machinery of the state—their government offices—to proclaim the tenets of their religious doctrines.  Na actually uses his position to urge conversion—he "urged everyone who does not know Jesus Christ to go and find Him."[13]  This is proselytizing by definition.  Any reasonable observer—indeed any observer at all—would see this as endorsing and approving a religious message, which necessarily excludes non-adherents. *Lynch*, *supra*, 465 U.S. at 688 (O'Connor, J., concurring).

The community reaction to this lawsuit demonstrates that reasonable observers view the prayers as a religiously significant issue and specifically an endorsement.  In *Indian River*, the court cataloged community reaction at board meetings, noting that most speakers were in favor of prayer and that those speakers supported prayer for religious reasons. *Indian River*, *supra*, 653 F.3d at 287 (looking at meetings, noting broad support among community members and that "their conduct reveals that in the minds of many, the issue of prayer at the Board meetings …[is] closely intertwined

---

[10] SUF Nos. 31, 34-37, 40, 43, 48, 51, 55, 57, 60-61, 67, 70, 76, 78, 81, 85, 89.
[11] SUF Nos. 32, 36, 41, 44, 46, 47, 49, 51, 52, 54, 58, 62, 65, 70, 74, 81, 82, 87, 92, 106.
[12] SUF No. 65.
[13] SUF No. 49.

18

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  with religion."). This reaction told the Court that the community viewed the prayers as

2  an endorsement.

3      The same is true here.  Meeting minutes show that at the first meeting after this

4  suit was filed, 22 people spoke in favor of the prayers, including Jack Hibbs, Na and

5  Cruz's pastor, while none spoke against the prayers.[14]  Citizens credited God, Jesus,

6  and other religious reasons for their support. For example, many at the meeting

7  supported the board's alleged behavior, including the outgoing Chino police chief.

8  "All of the qualities you see in me came from my faith. They came from my belief in

9  God," Chief Miles Pruitt said. "Prayer works. God hears prayer," one meeting attendee

10  said.  Another stated: "I've never met anyone who was offended when I asked if I

11  could pray for them so please keep up this good example."[15] Ila Zavoda, a retired

12  English teacher from Chino High School told the Board "I appreciate this district … I

13  recognize that there's [sic] strong conservative values here, and I praise God for the

14  way the elections went this time. Glory to God, the Christians voted."[16]

15      More than twenty supporters spoke out at the Board meeting on November 20,

16  2014, saying that they appreciated the board and their actions. Many others spoke at

17  the December 11 meeting, telling the Board that the only person they had to answer to

18  was God.[17]

19

20  _____

21  [14] SUF No. 107.

   [15] CBS News LA, "Chino Valley Unified School District Target Of Suit Over Prayer
22  At Board Meetings,"  (Nov. 20, 2014), *available at* http://cbsloc.al/1vwxBDA.
   [16] Grace Wong, "Chino Valley Unified board mulls response to prayer lawsuit," *Inland*
23  *Valley Daily Bulletin*, Nov. 21, 2014, *available online at* http://bit.ly/1BN0G0w.
   [17] Grace Wong, "Chino Valley Unified blurs line between religion, public policy,"
24  *Inland Valley Daily Bulletin*, Dec. 28, 2014, *available online at* http://bit.ly/1yUb59X.
                                         19
25  PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
                OF MOTION FOR SUMMARY JUDGMENT
26

At the January 15, 2015 meeting, more than 20 supporters carried signs reading "We Support Prayer" or "We support keeping prayer in CVUSD board meetings " followed by a social media tag "#letsprayCVUSD."[18]

Like *Indian River*, most attendees supported the prayers and do so because the prayers are closely intertwined with their religion. Though most citizens support the prayers, some, including plaintiffs, oppose them. But all agree that the prayers are inextricably religious. Supporters want to keep the prayers because they want the government endorsing their religious beliefs. Plaintiffs and others want the prayers stopped because the government is endorsing religious beliefs that contravene their own. In short, *any* reasonable observer "would conclude that the primary effect of the Board's Policy was to endorse religion." *Indian River*, *supra*, 653 F.3d at 287.

As the undisputed facts demonstrate, the Board's conduct and policy fail each prong of the *Lemon* test. Defendant Board's conduct clearly violates the Establishment Clause of the First Amendment to the United States Constitution. Accordingly, summary judgment should be entered in favor of Plaintiffs on this claim.

### D. THE UNDISPUTED FACTS SUPPORT SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS ON THEIR CALIFORNIA CONSTITUTION CLAIMS AS WELL.

#### 1. The Board's conduct violates the Establishment Clause of the California Constitution

---

[18] Grace Wong, "Chino Valley school board denies violating church-and-state separation," *Inland Valley Daily Bulletin*, Jan. 15, 2015, *available online at* http://bit.ly/1yUbbi1.  Video at http://bit.ly/1yKL6QQ.

20

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    The analysis under Plaintiffs' claims under the California Constitution results in

2    the same conclusion. To determine claims under California's Establishment Clause,

3    the Court uses same analysis as under the federal Constitution.

4    Thus, in determining whether a government practice violates the

5    establishment clause of the state Constitution, California courts are

6    guided by First Amendment establishment clause jurisprudence. (See,

7    e.g., *East Bay, supra,* 24 Cal.4th at p. 719, 102 Cal.Rptr.2d 280, 13 P.3d

8    1122["Our construction of the establishment clause of article I, section 4

9    is ... guided by decisions of the Supreme Court"]; *Sands v. Morongo*

10   *Unified School Dist.* (1991) 53 Cal.3d 863, 883, 281 Cal.Rptr. 34, 809

11   P.2d 809 (*Sands* ) (lead opn. of Kennard, J.) ["federal cases ... supply

12   guidance for interpreting [the establishment clause of state

13   Constitution]"].)

14   *Sedlock v. Baird*, 235 Cal. App. 4th 874, 885, 185 Cal. Rptr. 3d 739 (2015)

15   Accordingly, to determine whether the conduct of the Board violates the

16   Establishment Clause of California's Constitution, the *Lemon* test is also employed. *Id.*

17   at 886.[19]

18   _____

19   [19] The Supreme Court of California went beyond merely applying the *Lemon* test in
     *Sands v. Morongo Unified School District,* 53 Cal.3d 863, 281 Cal.Rptr. 34  (1991),
20   and clearly expressed California courts' deference to the test as "law." *Id.* at 872
     (stating that the *Lemon* test "has remained controlling law for 20 years," and that the
21   court is "required to decide federal constitutional cases on the law as it presently
     exists"). The court applied the test to declare unconstitutional the inclusion of religious
22   invocations at public high school graduation ceremonies, having failed at least two, if
     not all, of the prongs under the *Lemon* test. *Id.* at 872 ("Although we have doubts
23   whether the government-sponsored prayers at issue here pass the "secular purpose"
     test, that question need not be addressed because we conclude that the practice of
24   government sponsorship of graduation prayers fails both the "effect" and the

                                          21
25   PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
                OF MOTION FOR SUMMARY JUDGMENT

26

1       Moreover, in analyzing the California Establishment Clause in the context of

2  school prayer, the California Supreme Court has emphasized that the United States

3  Supreme Court itself has declared that *Marsh* should not be applied in the analysis of

4  practices involving public schools. *Sands,* 53 Cal.3d at 881 ("The high court has taken

5  particular care to explain that *Marsh* should not be applied to determine the

6  constitutionality of public school practices.").

7       As the Board's conduct fails all prongs of the *Lemon* test when analyzed under

8  the federal Constitution (as shown above), that conduct also violates the California

9  Constitution to the same extent. Accordingly, Plaintiffs are entitled to summary

10  judgment on this state constitutional claim.

11

12         2.  <u>The Board's conduct violates California's No Preference Clause</u>

       The "No Preference Clause" of the California Constitution (Cal. Const. Art. I,

13  §4) is even "more expansive" than the Establishment Clause. *Am. Family Ass'n v. City*

14  *& County of San Francisco*, 277 F.3d 1114, 1123 (9th Cir. 2002), *cert. denied*, 537

15  U.S. 886, 123 S.Ct. 129 (Mem) (2002). Both California courts and the Ninth Circuit

16  "have interpreted [it] as censuring so much as even the *appearance* of religious

17  partiality." *Murphy v. Bilbray*, 782 F. Supp. 1420 (S.D. Cal. 1991); *see also Hewitt v.*

18  *Joyner*, 940 F.2d 1561, 1566 (9th Cir. 1991) *cert. denied*, 502 U.S. 1073, 112 S.Ct.

19  969 (1992).

20       California has interpreted its No Preference Clause as co-extensive with and

21  mirroring the federal Establishment Clause. *See Bennett v. Livermore Unified School*

22

23

24  "entanglement" tests of *Lemon, supra,* 403 U.S. 602, 91 S.Ct. 2105, thus rendering the
  practice unconstitutional.")

25  PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
      OF MOTION FOR SUMMARY JUDGMENT

26

*District,* 193 Cal.App.3d 1012, 106, 238 Cal.Rptr. 819 (1987) (citing *Johnson v. Huntington Beach Union High School District*, 68 Cal.App.3d 1 (1977) "[I]rrespective of the federal Constitution and of *Widmar's* potential application to high school activities, it is settled that *California's* Constitution does not permit the use of high school facilities as a meeting place for student religious activities. Such a use would both result in both state financing of religion—in the form of providing space, heat and light for the meetings,—and in impermissibly placing the state's imprimatur upon the religious activity.").

As demonstrated, the Board's conduct cannot pass any of the *Lemon* test prongs. Accordingly, such conduct can no more withstand the more expansive analysis under California's No Preference Clause.

3.  The Board's conduct also violates California's No Aid Clause

Plaintiffs are also entitled to summary judgment on their No Aid Clause claim. Cal. Const., Art. XVI, §5. The No Aid Clause is expansive and imposes a broad ban on any activity that assists in the promotion of religion. "*First,* article XVI, section 5, is so broad that state or local governments need not provide a financial benefit or tangible aid in order to violate the provision; they violate it by doing no more than lending their 'prestige and power' to a 'sectarian purpose.'" *Paulson v. City of San Diego*, 294 F.3d 1124, 1130 (9th Cir. 2002). The purpose of the No Aid Clause is to ban any official involvement that has the effect of promoting religion.

It bans any official involvement, whatever its form, which has the direct, immediate, and substantial effect of promoting religious purposes.' " *E. Bay,* 102 Cal.Rptr.2d 280, 13 P.3d at 1140(quoting *Cal. Educ. Facilities*

23

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1    *Auth. v. Priest,* 12 Cal.3d 593, 116 Cal.Rptr. 361, 526 P.2d 513, 521 n.

2    12 (1974)). Indeed, the court has stated that this section is "the

3    d[e]finitive statement of the principle of government impartiality in the

4    field of religion." *Priest,* 116 Cal.Rptr. 361, 526 P.2d at 520 (citation and

5    internal quotation marks omitted). According to the California Supreme

6    Court, this section was intended by its framers "to guarantee that the

7    power, authority, and financial resources of the government shall never

8    be devoted to the advancement or support of religious or sectarian

9    purposes." *Id.*

10   *Id.* at 1130.

11   California cases have consistently held that the State's constitutional provisions

12   "are more comprehensive than those of the federal Constitution (*Fox v. City of Los*

13   *Angeles* 22 Cal.3d 792, 796, 150 Cal.Rptr. 867 (1978)), and particularly so in the area

14   of involvement of religion in schools." *Bennett, supra*, 193 Cal.App.3d at 1016. Thus,

15   Article XVI, section 5 "forbids more than the appropriation or payment of public funds

16   to support sectarian institutions. It bans any official involvement, whatever its form,

17   which has the direct, immediate, and substantial effect of promoting religious

18   purposes." *California Educational Facilities Authority v. Priest* 12 Cal.3d 593, 605,

19   n.12, 116 Cal.Rptr. 361 (1974).

20   The Board's conduct during the Board meetings directly promotes not only

21   religion in general but Christianity specifically and emphatically. The prayers are

22   primarily Christian in context and have been given by Board members themselves. The

23   Bible readings and religious commentary are all of a Christian nature and emphasize

24

25   24
     PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
     OF MOTION FOR SUMMARY JUDGMENT

26

1    Christian beliefs to the point of calling on those in attendance to adopt these very

2    beliefs.

3          Such conduct by elected school officials such as the Defendants here is a clear

4    violation of the No Aid Clause. Accordingly, summary judgment should be granted on

5    this claim as well.

6

7    III.   CONCLUSION.

8          The undisputed facts demonstrate that Defendants' conduct during the Board

     meetings is an egregious and flagrant violation of both the federal and California State

9    Constitutions. Defendants engage in more than simple acknowledgement of diverse

10   religious belief and non-belief. Defendants actively and blatantly promote religion, and

11   their own particular religious beliefs. The Defendants act in an official capacity of that

12   of school officials. The official business of the CVUSD Board must take place during

13   Board meetings. There is no question that school board are an integral part of public

14   school life. The Board meetings are nothing less than school functions. Defendants'

15   conduct in this case must be analyzed in the school context.

16         In so doing, the undisputed facts compel only one conclusion, Defendants

17   conduct of opening the meetings with prayer, their Bible reading, religious

18   commentary, and proselytizing violate Plaintiffs constitutional rights. The Court

19   should grant this motion.

20                                        Respectfully submitted,

21        Dated: September 28, 2015       _____

22                                        David J. Kaloyanides
                                          Andrew Seidel
23                                        Rebecca Markert
                                          Attorneys for Plaintiffs
24
                                   25
25   PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
              OF MOTION FOR SUMMARY JUDGMENT
26