Kevin T. Snider, State Bar No. 170988
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Fax (916) 857-6902

Michael J. Peffer, State Bar No. 192265
*Counsel for Service*
P.O. Box 11630
Santa Ana, CA 92711
Phone: (714) 796-7150
Fax: (714) 796-7182
Email: michaelpeffer@pji.org

Attorney for Defendants

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> CHINO VALLEY UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, ETC. ET AL, <br><br> Defendants. | Case No.: 5:14-CV-02336 JGB(DTBx) <br><br> **DEFENDANTS' SUPPLEMENTAL BRIEF IN REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF SUMMARY JUDGMENT** <br><br> **(FRCP 56)** <br><br> **Date:** November 2, 2015 <br> **Time:** 9:00 a.m. <br> **Ctrm:** 1 <br> **Hon.:** Jesus G. Bernal |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

I.   PLAINTIFFS HAVE NOT CROSSED THE ART. III THRESHOLD FOR STANDING . . . . 1

II.  THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS FOR DAMAGES
     AGAINST THE SCHOOL BOARD AND MEMBERS SUED IN THEIR OFFICIAL
     CAPACITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

III. THE NEW DECLARATIONS ARE IMPROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A. Plaintiffs did not seek leave of Court to file two sets of supplemental
        evidentiary declarations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

     B.  Besides improper attestation, the new declarations use "cookie-cutter"
         attorney drafted language. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PLAINTIFFS HAVE NOT CROSSED THE ART. III THRESHOLD FOR STANDING.

Plaintiffs' (collectively "FFRF") further attempts to confer Article III standing upon themselves via untimely and unhelpful declarations serves only to undermine their efforts.  FFRFs' position is perhaps best captured in its remarkable claim that, for Article III standing, "[t]here is no requirement for detailed allegations to include date, time, or even specific memory of attending meetings to confer standing in an Establishment Clause case."  Supp. Br. at 4 (Ct. Doc. 78).  In other words, particularized injury does not require particulars.  This may well represent what FFRF wishes the legal landscape to be, but it certainly does not represent the current state of the law.

The requirement that injury be concrete and particularized is well established. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).   Justice KENNEDY further explained:

> [T]the party bringing suit must show that the action injures him in a concrete and personal way. This requirement is not just an empty formality. It preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to professed, stake in the outcome, and that the legal questions presented ... will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action. *Id.*, at 581 (Kennedy, J., concurring) (internal quotation marks omitted).

In the present case personal and concrete injury are absent.  What remains is nothing more than dislike and disagreement.  In other words – debate.  A few examples from the declarations will suffice.

---

Defendants' Supplemental Brief In Reply To Plaintiffs' Supplemental Brief
In Support of Summary Judgment

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Second Set Of Declarations Filed Oct. 15, 2015 (Ct. doc. 69)*
"I don't agree with the Board's religious views. I don't believe what they believe."  Doe 1 decl. ¶4; Doe 2 decl. ¶3

"What the Board is doing is wrong."  Doe 2 decl. ¶2.

"This conduct [invocations and religious statements by Board members] is not proper for a school nor its governing body."  Anderson decl. ¶3; Maldonado decl. ¶3; Doe 6 decl. ¶3; Doe 7 decl. ¶3; Doe 11 decl. ¶3; Doe 12 decl. ¶3; Doe 13 decl. ¶2; Doe 18 decl. ¶3;

"Religion is a personal choice."  Anderson decl. ¶5; Maldonado decl. ¶4; Doe 6 decl. ¶4; Doe 7 decl. ¶4; Doe 11 decl. ¶5; Doe 13 decl. ¶3.

"Religion should be a private matter for individuals."  Doe 4 decl. ¶2

"I have my own religious beliefs.  It is not the Board's business to push religion – any religion."  Doe 4 decl. ¶4.

"I want to have my children see that the school respects our Constitution and does not favor religious belief over non-belief."  Anderson decl. ¶3; Maldonado decl. ¶3; Doe 11 decl. ¶3; Doe 12 decl. ¶3; Doe 18 decl. ¶3.

"The message the Board sends by endorsing prayer and religious practice during its meetings is clear: prayer is important, prayer is better than non prayer." Anderson decl. ¶4; Doe 2 decl. ¶3; Doe 11 decl. ¶4; Doe 12 decl. ¶5; Doe 18 decl. ¶4.

"It is not proper and it is divisive and sends the wrong message when a school board promotes religious belief and prayer." Anderson decl. ¶5 Maldonado decl. ¶5. Doe 3 decl. ¶5; Doe 6 decl. ¶4; Doe 11 decl. ¶5; Doe 13 decl. ¶3; Doe 18 decl. ¶5.

"Its [Board] promotion of prayer, any prayer, sends the message that those who do not pray, those who do not believe, are lesser people, not fully welcome, and certainly not favored."  Anderson decl. ¶6; Maldonado decl. ¶5; Doe 3 decl. ¶6.

The thrust of the declarations are no more than debating points.  The declarants opinions about the propriety of invocations or elected officials making religious statements from the dais do not constitute injury such as to invoke the jurisdiction of Article III courts.

*Third Set Of Declarations Filed Nov. 23, 2015 (Ct. doc. 78-1)*

The third set of declarations use much of the same boilerplate language of the first.  The one difference is the use of the word *offensive*, e.g., "The prayers at the School Board meetings are offensive to my personal beliefs."  Doe 4 decl. ¶3.  *See also*, Maldonado decl. ¶3; Doe 6 decl. ¶4; Doe 7 decl. ¶4; Doe 11 decl. ¶4; Doe 18 decl. ¶4.

Standing alone, the use of the word *offensive* does not provide the evidence necessary to demonstrate actual, concrete, and particularized injury.   Other than the general notion that a declarant doesn't like something (e.g., a statement by a Board member) there is insufficient information that explains the *why* and *how* of the offensiveness that is unique to the individual declarant.  By way of illustration, if this case involved a car accident, it would not be enough to submit a declaration that states: "I got hurt."  Was it a broken bone; a burn; loss of hearing, etc.?  Did the declarant suffer physical pain and does that pain still linger?  Were there medical bills and how much were they?

In the case at bar, the declarants simply all claim the activities at the Board meetings are *offensive*.  Did they lose sleep; stay away from meetings; become angry; get a prescription from a psychiatrist?  (Of note, on cross-motions for summary judgment, Defendants do not challenge that Plaintiffs hold certain opinions.  Hence, there is still no dispute as to a material fact).

Several of the cases on which FFRF's Supplemental Brief rely illustrate this point.  In *Vasquez v. County of Los Angeles*, 487 F.3d 1246 (9th Cir. 2007), the

---

plaintiff did not need to identify each and every interaction with the offending county seal because his interaction was daily and unavoidable by virtue of his position as a county employee. *Id.* at 1249. He certainly did not become a county employee, or go out of his way, in order to be offended.

The *Vasquez* court cautioned,

> In certain cases, a plaintiff's contact with an allegedly offensive religious or anti-religious symbol will remain too tenuous, indirect, or abstract to give rise to Article III standing. This is necessarily so, lest this court be converted into 'a vehicle for the vindication of the value interests of concerned bystanders,' *United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), or worse yet, a 'judicial version [ ] of college debating forums.' *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)." *Id.,* at 1251.

Similarly, in *Van Orden v. Perry*, 545 U.S. 677 (2005), the plaintiff was deemed to have standing because, as a lawyer, he took frequent trips to the law library on the grounds of the Texas State Capitol. This route took him past the Ten Commandments monument – the focus of the lawsuit. *Id.*, at 682. Here, it is far from clear whether the Plaintiffs have independent reasons for attending school board meetings, or whether they are doing so in order to create the alleged injury of which they now complain. A careful review of the second set of declarations filed Oct. 15, 2015 (Ct. doc. 69) shows that declarants simply state that "they intend to go to meetings in the future." Anderson decl. ¶3; Maldonado decl. ¶3; Doe 3 decl. ¶3; Doe 4 decl. ¶3; Doe 6 decl. ¶3; Doe 7 decl. ¶3; Doe 11 decl. ¶3; Doe 12 decl. ¶3; Doe 13 decl. ¶3; Doe 18 decl. ¶3. Or, "I want to go to board meetings in the future." Doe 1 decl. ¶2; Doe 2 decl. ¶2.

The third set of declarations Nov. 23, 2015 (Ct. doc. 78-1) provide some dates but are quite short on specifics necessary for standing. No declarant states that they

no longer attend meetings because of the invocations or statements made by two
board members.  Unlike the Austin lawyer in *Van Orden* who needs to frequently
use the law library, none of the Plaintiffs in the present case even state the purpose
for attending meetings.  Moreover, no declarant states that they step out of meetings
during the invocation or even press the mute switch if they watch the proceedings on
television.  Unlike other Establishment Clause cases in which standing was found,
after filing three sets of declarations Plaintiffs have not shown injury.  They have
not changed their route, schedule or television viewing habits in order to avoid an
encounter with religion.

Plaintiffs' reliance on *Catholic League for Religious and Civil Rights v. City
and County of San Francisco*, 624 F.3d 1043 (9th Cir. 2010), is also baffling.  Split
three ways, the en banc court's opinions are hardly a ringing endorsement of the
Plaintiffs' position here.  Five of the judges maintained that the Catholic League did
***not*** have standing.  Three judges believed the supervisors' polemics against the
Catholic Church were permissible government speech, and three judges believed
that the anti-religious attacks violated the Establishment Clause.  Thus, in contrast to
FFRF's characterization of the decision, 8 of the 11 judges rejected the
Establishment Clause claims either for lack of standing or on the merits.

Likewise unhelpful to the Plaintiffs' cause is its reliance on *Buono*.  In
reversing the Ninth Circuit, the Supreme Court traced the convoluted history of that
case but could not  agree on standing.  *Salazar v. Buono*, 559 U.S. 700 (2010).
Writing for a plurality, Justice Kennedy determined that the Court could not
reexamine the plaintiff's standing for Establishment Clause purposes, since the
government had not appealed the earlier decision.  Instead, the plaintiff had standing
to challenge the federal government's land transfer because it directly affected the
injunction he had won.  *Id.* at 711-13.

Lastly, Plaintiffs offer a highly imaginative – and edited – history of *Town of Greece*. On appeal, the Town chose not to challenge the plaintiffs' standing to sue. Instead, the Town focused only on standing to challenge particular prayers, rather than the prayer practice as a whole. Not surprisingly, then, FFRF omits from its quote of the Second Circuit's footnote on standing the court's first sentence, which reads, "On appeal the defendants do not dispute that the plaintiffs have standing to sue." *Galloway v. Town of Greece*, 681 F.3d 20, 30 n. 4 (2d Cir. 2012). Here, CVUSD makes no such concession. Since the Town did not challenge standing overall, *Town of Greece* speaks only to the merits of legislative prayer, not to Article III standing.

In short, then, Plaintiffs' attempts to downplay the importance of concrete, particularized injury do not work. Neither its belated attempts to introduce new evidence, nor its off-base citation to authorities, carry its burden of demonstrating Article III standing.

## II. THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS FOR DAMAGES AGAINST THE SCHOOL BOARD AND MEMBERS SUED IN THEIR OFFICIAL CAPACITIES.

Plaintiffs seek nominal damages against the Chino Valley Unified School District Board of Education and its members (Irene Hernandez-Blair, Andrew Cruz, Charles Dickie, James Na, and Sylvia Orozco), all sued in their official capacities. In California public schools are arms of the state. As such, they enjoy immunity under the Eleventh Amendment. *Belanger v. Madera Unified School Dist*., 963 F.2d 248 (9th Cir. Cal. 1992). Of course, this includes not just districts, but the school boards as well. *Shorter v. L.A. Unified Sch. Dist*., 2013 U.S. Dist. LEXIS 172372 (C.D. Cal. Oct. 21, 2013) citing *Corales v. Bennett*, 567 F.3d 554, 573 (9th Cir. 2009). "Likewise the individual defendants share in the district's eleventh

amendment immunity because they were sued in their official capacities. Such suits 'are, in essence, actions against the governmental entity of which the officer is an agent.'" *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201-202 (9th Cir. 1988) quoting *Jackson v. Hayakawa*, 682 F.2d 1344 at 1350 (9th Cir. 1982).   As such, Plaintiffs in the present case face an insurmountable constitutional barrier in pursuing claims for damages.

**III.   THE NEW DECLARATIONS ARE IMPROPER**

    **A.   Plaintiffs did not seek leave of Court to file two sets of supplemental evidentiary declarations.**

On October 15, 2015, Plaintiffs filed twelve declarations (39-page filing) in support of their motion for summary judgment.  They did so without moving for leave of court and such submission cannot be filed of right under FRCP 56(e). Defendants again object to those declarations.  At the hearing before this Court on November 16, 2015, the Court ordered supplemental briefing.  Plaintiffs not only filed a brief, they filed an additional 22-page document consisting of an additional six declarations.  Once again, Defendants object to this as entirely improper.   It is prejudicial and fundamentally unfair to consider these untimely declarations every time the Defendants raise a meritorious defense.   Plaintiffs did this after Defendants filed their opposition to the Plaintiffs' Motion for Summary Judgment and now after oral argument.

Further, once again, the declarants fail to claim the necessary personal knowledge required under FRCP 56(c)(4).  The Court should not allow, nor consider Plaintiffs' submission of new evidence, over and over again, until "they get it right." How are Defendants to litigate their case when Plaintiffs are allowed to engage in these rather unorthodox tactics?

Consider that in support of their motion for summary judgment, Plaintiffs filed fifty-three (53) exhibits, three declarations and a 21-page Statement of Uncontroverted Facts And Conclusions Of Law enumerating more than one hundred factual claims.  Ct. Doc. 48-2.  In response, Defendants filed a Statement Of Genuine Disputes.  That document states in pertinent part as follows:   "Defendants do not dispute any of the 106 uncontroverted facts."  Ct. Doc. 60, 2:11.   Then, to make certain that the significance of this statement would not be overlooked, Defendants began their points and authorities in opposition to summary judgment as follows:

### STANDARD OF REVIEW
### All Facts In And They Are Not Disputed

The parties have collectively submitted five declarations and over fifty exhibits in support of their respective motions for summary judgment. Although there is a sharp dispute over the law, there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Thus, all issues of fact implicit in the contested issues of law are uncontroverted."   Ct. Doc. 59, 1:1-9

In all fairness, the present cross-motions for summary judgment should be decided on the evidence and statements of uncontroverted facts submitted by the respective parties' in their moving papers.   Consideration of two sets of improperly attested declarations after the evidence is closed is highly improper.

**B.  Besides improper attestation, the new declarations use "cookie-cutter" attorney drafted language.**

The Plaintiffs filed numerous declarations that use nearly identical language. These include the following:

- "I reviewed the minutes from these meetings to refresh my recollection" Maldonado decl. ¶1; Doe 6 decl. ¶1; Doe 7 decl. ¶1; Doe 11 decl. ¶3;  Doe 18 decl. ¶3

- "At each meeting I have attended, the School Board has had a prayer after the reopening of the public portion of the meeting.  Maldonado decl. ¶2; Doe 6 decl. ¶3; Doe 7 decl. ¶3; Doe 11 decl. ¶3; Doe 18 decl. ¶3

- "prayers…are offensive to my personal beliefs." Maldonado decl. ¶3; Doe 4 decl. ¶3; Doe 6 decl. ¶4; Doe 7 decl. ¶4;  Doe 11 decl. ¶4;  Doe 18 decl. ¶4

- "I do not want to be exposed to the prayers"  Doe 6 decl. ¶4; Doe 7 decl. ¶4; Doe 11 decl. ¶4;  Doe 18 decl. ¶4

- "the prayers and prayer policy, along with the other religious conduct by the School Board members sends the clear message that if anyone wants to participate…they must agree or acquiesce to the religious views and beliefs of the School Board members." Maldonado decl. ¶5; Doe 4 decl. ¶4; Doe 6 decl. ¶5; Doe 7 decl. ¶5;  Doe 11 decl. ¶5;  Doe 18 decl. ¶5

- "The School Board members consistently thank and praise those who pray at the meetings especially when the prayers are from a Christian viewpoint." Maldonado decl. ¶5; Doe 4 decl. ¶4; Doe 6 decl. ¶5; Doe 7 decl. ¶5; Doe 11 decl. ¶5; Doe 18 decl. ¶5

- "This conduct is not proper for a school nor its governing body."  Maldonado decl. ¶4; Doe 4 decl. ¶3; Doe 6 decl. ¶4; Doe 7 decl. ¶4;  Doe 11 decl. ¶4; Doe 18 decl. ¶4

- "The message of the School Board is clear: religious people, particularly Christians, are better, more favored, and everyone should adopt these beliefs" Maldonado decl. ¶5; Doe 4 decl. ¶5; Doe 6 decl. ¶5; Doe 7 decl. ¶5; Doe 11 decl. ¶5; Doe 18 decl. ¶5

- "If anyone doesn't like or agree with the school board they are free to leave. Doe 11 decl. ¶5;  Doe 18 decl. ¶5

"Cookie-cutter" declarations do not inspire confidence. *Espinoza v. Domino's Pizza, LLC*, 2009 U.S. Dist. LEXIS 31093 (C.D. Cal. Feb. 18, 2009).  Court's

strongly disapprove of such.  *Silverman v. Smithkline Beecham Corp.*, 2007 U.S. Dist. LEXIS 80030, fn. 5 (C.D. Cal. Oct. 15, 2007).

## CONCLUSION

The Eleventh Amendment presents a constitutional obstacle to FFRF's request for damages too great to overcome.

Additionally, there is no dispute as to a material fact.  FFRF has submitted three sets of lengthy declarations.  These declarations have failed to provide evidence sufficient to establish injury that is *actual*, *concrete*, and *particularized.*  A trial is not necessary.  One must ask what these declarants can state orally that they could not have written.  Although the Plaintiffs have articulated their opinions on the propriety of invocations and religious statements made by Board members, the truth is that the Plaintiffs can offer nothing more than generalized grievances.  On summary judgment, Defendants do not challenge that Plaintiffs have certain opinions.

Because they have not carried their burden, the Plaintiffs' motion for summary judgment must be denied and Defendants' cross-motion granted.

November 25, 2015

Respectfully submitted,

_/S/_ Kevin Snider_____
_/S/_ Michael Peffer_____
_/S/_ Matthew McReynolds_____
Kevin T. Snider
Matthew B. McReynolds
Michael J. Peffer

*Attorneys for Defendants*

Defendants' Supplemental Brief In Reply To Plaintiffs' Supplemental Brief
In Support of Summary Judgment

10