# EXHIBIT "C"

Case 5:14-cv-02336-JGB-DTB Document 101 Filed 03/31/16 Page 1 of 9 Page ID #:1585

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 14-2336-JGB (DTBx)** | Date | March 31, 2016 |
| Title | *Freedom From Religion Foundation, Inc., et al. v. Chino Valley Unified School District Board of Education, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING IN PART Plaintiffs' Motion for Attorney's Fees (Doc. No. 89); and (2) VACATING April 4, 2016 Hearing (IN CHAMBERS)

Before the Court is Plaintiffs' Motion for an Award of Attorney's Fees. (Doc. No. 89.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS IN PART the Motion and VACATES the April 4, 2016 hearing.

## I. BACKGROUND

On November 13, 2014, Plaintiffs filed this action against Defendants Board of Education, and James Na, Sylvia Orozco, Charles Dickie, Andrew Cruz, and Irene Hernandez-Blair, members of the Board of Education in their official representative capacities, alleging that Defendants violated the Establishment Clause of the First Amendment by instituting a policy and practice of prayer in the Chino Valley District's school board meetings. Plaintiffs sought a declaratory judgment that Defendants' conduct of prayers, Bible readings, and proselytizing at Board meetings violate Plaintiffs' rights under the Federal and California constitutions, a permanent injunction enjoining the Board and its members from continuing to violate Plaintiffs' constitutional rights, and nominal damages for past constitutional violations.

Plaintiffs filed a First Amended Complaint on December 15, 2014. ("FAC," Doc. No. 20.) On September 28, 2015, Plaintiffs filed a Motion for Summary Judgment. (Doc. No. 48).

On February 18, 2016, the Court granted in part Plaintiffs' motion for summary judgment. (Doc. No. 87.) Specifically, the Court held that Plaintiffs were entitled to judgment against Defendants presently on the Board, James Na, Sylvia Orozco, Andrew Cruz, and Irene Hernandez-Blair, declaring that the Resolution permitting religious prayer in Board meetings, and the policy and custom of reciting prayers, Bible readings, and proselytizing at Board meetings, constitute unconstitutional government endorsements of religion in violation of Plaintiffs' First Amendment rights. (Id. at 26.) The Court further found that Plaintiffs were entitled to injunctive relief against the Board members in their individual representative capacities, and enjoined the Board members from conducting, permitting or otherwise endorsing school-sponsored prayer in Board meetings. (Id. at 25-26.)

The Court dismissed all state and federal claims against the Defendant Board, and all state claims against the Defendant Board members in their individual official capacities, as barred by the Eleventh Amendment. (Id. at 25-26.) The Court also dismissed all claims against Defendant Dickie, who is no longer a member of the Board. (Id. at 26.)

Pursuant to 42 U.S.C. § 1988, the Court found that Plaintiffs are entitled to costs and reasonable attorney's fees incurred in bringing this action to vindicate violations of Plaintiffs' constitutional rights. (Id. at 26.) Judgment was entered in favor of Plaintiffs in accordance with the Court's Order. (Doc. No. 88.)

As the prevailing party, Plaintiffs filed a Motion for an Award of Attorney's Fees on March 3, 2016. ("Motion," Doc. No. 89.) Plaintiffs submitted the following documents in support of their Motion:

- Declaration of David Kaloyanides ("Kaloyanides Decl.," Doc. No. 89-1);
- Declaration of Andrew Seidel ("Seidel Decl.," Doc. No. 89-2);
- Declaration of Rebecca Markert ("Markert Decl.," Doc. No. 89-3); and
- Declaration of Roda Torres ("Torres Decl.," Doc. No. 89-4).

Defendants opposed the Motion on March 14, 2016. ("Opp'n," Doc. No. 92.) Defendants submitted the following documents in support of their Opposition:

- Declaration of Margaret A. Chidester ("Chidester Decl.," Doc. No. 92-1);
- Declaration of Nicolaie Cocis ("Cocis Decl.," Doc. No. 92-2); and
- Declaration of Robert Tyler ("Tyler Decl.," Doc. No. 92-3).

Plaintiff submitted a Reply on March 21, 2016. ("Reply," Doc. No. 96.)

## II. LEGAL STANDARD

Ordinarily, the prevailing party in a lawsuit does not collect fees absent contractual or statutory authorization. See Int'l Union of Petroleum & Indus. Workers v. Western Indus. Maintenance, Inc., 707 F.2d 425, 428 (9th Cir. 1983). When, as here, a civil rights plaintiff prevails on claims brought pursuant to 42 U.S.C. § 1983, § 1988 provides for an award of

attorney's fees: "In any action or proceeding to enforce a provision of . . . 42 U.S.C. §§ 1981-1983 . . . the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988.

When an award of attorney's fees is authorized, the court must calculate the proper amount of the award to ensure that it is reasonable. Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983). Reasonableness is generally determined using the "lodestar" method, where a court considers the work completed by the attorneys and multiplies "the number of hours reasonably expended on the litigation by the reasonable hourly rate." Gracie v. Gracie, 217 F.3d 1060, 1070 (9th Cir. 2000) (internal citations omitted). The moving party has the burden to produce evidence that the rates and hours worked are reasonable. See Intel Corp. v. Terabyte Int'l, 6 F.3d 614, 623 (9th Cir. 1983).

"Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 978 (9th Cir. 2008) (quoting Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). In such cases, a district court may make upward or downward adjustments to the presumptively reasonable lodestar based on the factors set out in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975): (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the necessary skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys on the case; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. To the extent that the Kerr factors are used to adjust the first prong determination of "reasonable" hours times "reasonable" rate, they may not be "double count[ed]" later. See Corder v. Gates, 947 F.2d 374, 377 (9th Cir. 1991).

### III. DISCUSSION

Plaintiffs propose a lodestar figure of $208,275 for work totaling 429.9 hours. Plaintiffs seek hourly rates ranging from $650 to $200 for attorneys David Kaloyanides, Andrew Seidel and Rebecca Markert and law clerk Roda Torres.

Defendants do not contest that Plaintiffs are entitled to attorney's fees, but they challenge, in various ways, the reasonableness of the hours billed and the billing rates. Defendants argue Plaintiffs' counsel cannot bill for unproductive travel time (Opp'n at 7) or clerical tasks (Opp'n at 8) and that some of Plaintiffs' billing entries should be reduced because Plaintiffs' allegedly engaged in "block billing." (Opp'n at 8.) Defendants also contend Plaintiffs' counsel should not receive attorney's fees for time investigating alleged incidents of retaliation against Plaintiffs, or for time spent on a related motion for a protective order. (Opp'n at 11-12.) Finally, Defendants contend that Plaintiffs' requested hourly rates are unreasonably high. (Opp'n at 5-7.) The Court addresses each argument in turn.

### A. Reasonableness of Hours Expended

#### 1. Travel Time

Defendants seek a reduction for "unproductive time" spent while Plaintiffs' attorneys traveled to and from court. (Opp'n at 7.) The costs of attorney travel are compensable, including an amount for the time an attorney spends in transit. See Int'l Woodworkers, Local 3–98 v. Donovan, 792 F.2d 762, 767 (9th Cir. 1986) ("'Expenses' includes those that are normally billed a client, such as telephone calls, postage, and attorney travel expenses."). In this District, courts generally compensate attorneys at their full hourly rate for travel time. See, e.g., Langer v. 1600 E Downtown Prop., LLC, No. 2:14-CV-09274-CAS, 2015 WL 3649085, at *4 (C.D. Cal. June 9, 2015); Rodriguez v. County of Los Angeles, No. 10–6342–CBM (AJWx), 2014 WL 8390755, at *10 (C.D. Cal. Dec. 29, 2014) ("Reasonable travel time by the attorney is compensable, at full rates, if that is the practice in the community," and "[i]n Los Angeles, the practice is to compensate at full rates for travel time."). See also Hall v. City of Fairfield, No. 2:10–cv–0508 DAD, 2014 WL 1286001, at *13 (E.D. Cal. Mar. 31, 2014); Santiago v. Equable Ascent Fin., No. C 11-3158 CRB, 2013 WL 3498079, at *1 (N.D. Cal. July 12, 2013). So long as the amount of time spent traveling is reasonable, and the meeting or event to which the attorney is traveling is necessary to the case, the Court will award compensation of travel time at the attorney's full hourly rate.

Each of Plaintiffs' billing entries related to travel are for required court appearances. Further, they are for reasonable lengths of time. (See, e.g., Kaloyanides Decl. at 15) (billing .7 hours for travel from office in Chino, CA to courthouse in Riverside, CA). Accordingly, the Court rejects Defendants' argument for excluding this billed time.

#### 2. Block Billing

Defendants seek to reduce Plaintiffs' fee award for poorly documented "block billing." (Opp'n at 8.) "Block billing" is "'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007). Because the "fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked," the Court may reduce hours that have been block-billed "because block billing makes it more difficult to determine how much time was spent on particular activities." Id. at 948. A reduction for block-billed hours may not be appropriate if "individual tasks are specified" and the entries are "detailed enough for the Court to assess the reasonableness of the hours billed." Campbell v. Nat'l Passenger R.R. Corp., 718 F.Supp.2d 1093, 1103 (N.D. Cal. 2010).

The Court has reviewed the entries challenged for block billing and finds them to be sufficiently detailed to give the Court an accurate sense of the tasks performed during each billed period. The entries are itemized, and most of them are for relatively short periods of time—2.3, 1.3 and .3 hours. Two entries are for longer—4.3 hours to prepare the joint rule 26(f) report and under seal filing, and 5.2 hours to revise the reply in support of summary judgment and draft the

notice of manual filing and under seal declarations. While it might have been preferable to separate these entries into discrete tasks, they are detailed enough for the Court to determine that the hours billed are reasonable. Accordingly, a reduction for the allegedly "block-billed" entries is not appropriate.

Defendants make a related but distinct objection that these same entries include time for filing documents, which is a clerical task that should not be billed at an attorney rate. Defendants' only example of alleged billing of clerical tasks is the entry on April 20, 2015, billing .3 hours for "Draft/prepare/revise and file Notice of Withdrawal of Motion." (Opp'n at 8-11.) Defendants acknowledge that drafting, preparing and revising the notice of withdrawal constituted non-clerical actions, but argue that _filing_ the notice of withdrawal is a non-billable clerical task. (Opp'n at 8-9.) Regardless of whether the act of filing is not billable, the Court finds that there is nothing unreasonable about billing .3 hours for drafting, preparing and revising the notice of withdrawal. Plaintiffs could have billed .3 hours for this entry, omitted the word "file" and avoided any objection. Accordingly, because the alleged clerical task of filing is negligible, such that the total time was reasonable even if limited to the non-clerical tasks, the Court does not think a reduction is appropriate.

### 3. Hours Billed for Researching Alleged Incidents of Retaliation and Securing Protective Order

Defendants contend that Plaintiffs' counsel's investigation of alleged incidents of retaliation against Plaintiffs was not time "reasonably expended" because the alleged incidents "did not result in any specific legal action." (Opp'n at 11-12.) Further, because Plaintiffs secured a protective order to prevent disclosure of Plaintiffs' identities, Defendants contend investigation into retaliation was unnecessary because Defendants never learned the identities of any unnamed Doe Plaintiffs.

Defendants misconstrue the purpose and timing of Plaintiffs' investigatory efforts with respect to the protective order. Plaintiffs' counsel researched alleged incidents of retaliation against Plaintiffs, and against plaintiffs in similar establishment clause cases, to marshal support for Plaintiffs' motion for a protective order. Plaintiffs' counsel's efforts resulted in a specific legal action directly related to this case: the entry of the protective order concealing Plaintiffs' identities. Contrary to Defendants' suggestion, the fact that the protective order was eventually entered by stipulation does not render the investigation unnecessary. Defendants had multiple opportunities to stipulate to a protective order, but only agreed to do so after weeks of negotiation and after Plaintiffs filed the motion. (See Second Declaration of David Kaloyanides, Doc. No. 96-1, ¶¶ 15-19; Chidester Decl. ¶ 19.) Accordingly, the Court finds Plaintiffs' counsel's entries on March 16, 2015 and March 25, 2015 to be reasonable and directly related to the litigation.

However, Plaintiffs' entry on March 29, 2015, billing 3.3 hours for "Client conference (plaintiff Maldonado) re retaliation issues; review correspondence relating to possible retaliation by local school against Doe 4," is unreasonable as to the time spent investigating retaliation against Doe 4. Plaintiff Maldonado submitted a declaration in support of the motion for a

protective order discussing Maldonado's personal experience of harassment as a named Plaintiff in this case, (Doc. No. 27-2, Ex. 2), therefore the conference with him was reasonably conducted in connection with this litigation. But the motion for the protective order did not reference any retaliation issues as to Doe 4, and Plaintiffs presented no evidence, then or now, that any retaliation against Doe 4 occurred. Since the entry is vague as to how much time was spent in the conference with Maldonado versus time spent reviewing correspondence regarding allegations of retaliation against Doe 4, the Court reduces this entry by 50%, and reduces the following entry for March 30, 2015, which was solely related to alleged retaliation against Doe 4, by 100%, for a total reduction of 2 hours.

### 4. Hours Billed for Reply

In total, Plaintiffs' counsel seeks to bill 15.8 hours for Mr. Kaloyanides' time, and 3 hours for Ms. Torres' time spent preparing the Reply. The Court finds this very excessive given the straightforward nature of this motion. In particular, the Court finds excessive the 3.2 hours Mr. Kaloyanides spent researching the backgrounds of Defense counsel in order to refute Defendants' specious contention that Defense counsel's hourly rate provides an appropriate baseline for calculating Plaintiffs' counsels' hourly rates. Defendants' argument is clearly meritless—opposing counsels' belief as to the reasonableness of their own hourly rates is irrelevant to determining the prevailing rate in the legal community. This argument could have been dispatched with a reference to Ninth Circuit law; it did not require 3.2 hours of research into Defense counsel's individual backgrounds. See Welch v. Metropolitan Life Ins. Co., 480 F.3d 942 (9th Cir. 2007) (holding that the market rate overall, not what an individual attorney charges, is the relevant inquiry for the lodestar rate). The Court therefore subtracts 3.2 hours from the time Mr. Kaloyanides spent on the Reply.

The Court also finds the remaining 12.6 hours to be excessive for a straightforward reply and reduces counsel's time by 30%, for a total reduction of 7 hours.

### B. Reasonableness of Billing Rates

The second prong of the lodestar calculation relates to the reasonableness of the billing rate. "'[R]easonable rates' under Section 1988 are to be calculated according to the prevailing market rates in the relevant legal community." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The Ninth Circuit has further clarified that "such rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." Davis v. City of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992). The relevant community is that in which the district court sits. Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 906 (9th Cir. 1995).

Plaintiffs seek an hourly rate of $650 for attorney David Kaloyanides. Mr. Kaloyanides has been a member of the California bar since 1992. He is a Certified Specialist in Criminal law and has handled over 250 federal cases in this District, trying over 36 cases to verdict. (Kaloyanides Decl. ¶ 4.) He has been a member of the Criminal Justice Act Indigent Defense Panel for 12 years, and was the Criminal Justice Act National Trial Panel Representative to the

Administrative Office of the U.S. Courts for the District from 2011 to 2014. (Kaloyanides Decl. ¶ 7.) Recently, Mr. Kaloyanides was appointed to the International Criminal Court's List of Counsel for the International Criminal Court in The Hague, Netherlands. (Kaloyanides Decl. ¶ 6.) In addition to his extensive federal criminal practice, Mr. Kaloyanides has experience litigating First Amendment cases, including one case which he tried in this District, securing declaratory and injunctive relief for his clients. (Kaloyanides Decl. ¶ 12.)

Based on Mr. Kaloyanides' Declaration detailing his extensive federal experience in this District, and the Court's own knowledge of prevailing market rates, the Court concludes that these rates are reasonable and in line with prevailing rates in the relevant community. See, e.g., Kearney v. Hyundai Motor Am., 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013) (finding $650 per hour reasonable for attorney with more than twenty years' experience). See also Progreso Produce Ltd 1 LP v. Triton Imports, 2009 WL 1705609, at *2 (C.D. Cal. June 15, 2009) (relying upon court's knowledge of prevailing market rates to determine reasonableness of claimed rates).[1]

Plaintiffs seek an hourly rate of $500 for attorney Andrew Seidel. Mr. Seidel has been admitted to practice law in Colorado since 2009 and in Wisconsin since 2012. He has been employed as a staff attorney for the Freedom From Religion Foundation, Inc. ("FFRF") since 2011. (Seidel Decl. ¶¶ 3, 5, 13.) Mr. Seidel has extensive experience litigating Establishment Clause cases. He has worked on 15 church-state litigation cases, serving as lead counsel in seven of them. (Seidel Decl. ¶ 13.) Mr. Seidel was the principal author of an amicus brief to the Supreme Court in Town of Greece, N.Y. v. Galloway, 134 S. Ct. 1811 (2014), a central case in this litigation. (Seidel Decl. ¶ 16.) Based on Mr. Seidel's Declaration, his highly relevant specialized experience, and the Court's knowledge of prevailing market rates, the Court concludes that $500 is reasonable and in line with the prevailing rate for attorneys of comparable experience in the relevant legal community. See, e.g., Rodriguez v. City of Los Angeles, 96 F.Supp.3d 1012, 1023 (C.D. Cal. 2014) (finding $500 reasonable for a 2008 graduate in a § 1983 excessive force case).

Plaintiffs seek an hourly rate of $550 for attorney Rebecca Markert. (Motion at 20.) Ms. Markert is the senior staff attorney at FFRF and the supervisor to Mr. Seidel. Ms. Markert was

---

[1] Defendants provide no evidence or legal support for their contention that $650 is an unreasonable rate for attorneys of Mr. Kaloyanides' expertise in this District. Instead, Defendants submit declarations from current and former Defense counsel, stating what they believe to be reasonable hourly rates for their own services. Defendants miss the point. What Defense counsel charges, or what Defense counsel believes to be reasonable, is irrelevant to the determination of the prevailing rate in the legal community. See Welch v. Metropolitan Life Ins. Co., 480 F.3d 942 (9th Cir. 2007) (holding that the market rate overall, not what an individual attorney charges, is the relevant inquiry for the lodestar rate). $275 and $350 per hour may be reasonable rates for Defense counsel, (Chidester Decl. ¶ 17; Cocis Decl. ¶ 11), but Defendants have presented no evidence that these are the prevailing rates in the District for counsel of Mr. Kaloyanides' experience. The Court determines they are not.

admitted to the Wisconsin bar in 2008 and has worked at FFRF since then. She has been personally involved in over 40 First Amendment matters, (Markert Decl. ¶¶ 3, 5, 8-9), and has submitted two amicus briefs to the Supreme Court in Establishment Clause cases. (Markert Decl. ¶ 12.) For the reasons stated above as to Mr. Seidel, factoring in Ms. Markert's additional experience in First Amendment law and additional year as a member of the bar, the Court finds $550 to be reasonable and in line with the prevailing rate in the community.[2]

Finally, Plaintiffs seek an hourly rate of $200 per hour for law clerk Roda Torres. (Motion at 22.) Defendants do not oppose this request, and the Court finds $200 to be a reasonable rate in line with the prevailing rate for paralegals and law clerks in the community. See Pierce v. Cty. of Orange, 905 F. Supp. 2d 1017, 1038 n.19 (C.D. Cal. 2012) (median rate for paralegal in Los Angeles in 2008 was $195 per hour).[3]

### C. Calculation of Lodestar

After reviewing the reasonableness of rates and hours requested by Plaintiffs' counsel, and as calculated below, the Court finds that the lodestar is $202,425.00 prior to the consideration of a multiplier.

| Timekeeper | Hours (post-reduction) | Hourly Rate | Total Amount |
|---|---|---|---|
| David Kaloyanides | 202.4 | $650 | $131,560.00 |
| Andrew Seidel | 74.8 | $500 | $37,400.00 |
| Rebecca Markert | 13.5 | $550 | $7,425.00 |
| Roda Torres | 130.2 | $200 | $26,040.00 |

Once the "lodestar" figure is calculated, a court has discretion to adjust the figure based on certain factors. See Kerr v. Screen Extras Guild, 526 F.2d 67, 70 (9th Cir. 1975). A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and therefore, it should only be enhanced or reduced in "rare and exceptional cases." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119, fn. 4 (9th Cir. 2000); quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986). Plaintiffs do not seek a modification of the lodestar, and the Court finds a further reduction in the overall fee is not warranted.

---

[2] Defendants contend that Ms. Markert's rate should be reduced to $500 per hour because Ms. Markert attests that she "believe[s] $500 is a reasonable hourly rate for [her] work." (Opp'n at 7) (quoting Markert Decl. ¶ 16.) As stated above, it is irrelevant what one attorney charges or believes to be a reasonable rate. The only relevant question is whether the amount requested by Plaintiffs, $550, is reasonably in line with the market rate for Ms. Markert's services in this District. See Welch v. Metropolitan Life Ins. Co., 480 F.3d 942 (9th Cir. 2007). The Court concludes that it is.

[3] The Court notes that Ms. Torres is an especially qualified law clerk. She has been an attorney licensed in New York since 2010. (Torres Decl. ¶ 10.)

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' Motion for an Award of Attorney's Fees. Plaintiffs are entitled to $202,425.00 in attorney's fees and $546.70 in costs from Defendants James Na, Sylvia Orozco, Andrew Cruz, and Irene Hernandez-Blair in their individual representative capacities as members of the Chino Valley Unified School District Board of Education, for a total award of $202,971.70. The April 4, 2016 hearing on the Motion is VACATED.

**IT IS SO ORDERED.**