ADVOCATES FOR FAITH & FREEDOM
Robert H. Tyler (SBN 179572)
btyler@faith-freedom.com
Joel Oster (*Pro Hac Vice*)
joster@faith-freedom.com
Julianne Fleischer (SBN 337006)
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Telephone:  (951) 304-7583

Attorneys for Attorneys for Defendants **CHINO
VALLEY UNIFIED SCHOOL DISTRICT, et al**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC.; DOE 1, a minor by and through his/her guardian; DOE 2, and DOE 2 individually; DOE 3 and DOE 4 <br><br> Plaintiff(s) <br><br> v. <br><br> Defendant(s) <br><br> CHINO VALLEY UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION; and CHINO VALLEY UNIFIED SCHOOL BOARD OF EDUCATION BOARD MEMBERS JAMES NA, SYLVIA OROZCO, CHARLES DICKIE, ANDREW CRUZ, IRENE HERNANDEZ-BLAIR, in their official representative capacities, <br><br> Defendant(s) | Case No.:  EDCV 14-2336-JGB <br><br> *Hon. Jesus G. Bernal* <br><br> DEFENDANTS' REPLY IN SUPPORT OF RULE 60 MOTION FOR RELIEF FOLLOWING THE SUPREME COURT'S OVERTURNING OF THE *LEMON* TEST ON WHICH THE COURT'S PRIOR ORDER RELIED |

REPLY

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 4

II. THE HISTORY OF SCHOOL BOARD PRAYER IN AMERICA ...................... 6

    A.     The History Of Prayer Before Public Meetings ..................................... 6

    B.     The Order Was Premised On The *Lemon* Test, Not A Historical Test .. 8

    C.     Mere Exposure To Prayer Is Not An Establishment Clause Violation 10

III. SCHOOL BOARD'S ANTI-PROSELYTIZING POLICY WOULD PROHIBIT THE PRAYER OPPORTUNITY FROM BEING EXPLOITED ............................ 12

IV. A RULE 60 MOTION IS THE PROPER RULE FOR THIS RELIEF ............. 13

V. CONCLUSION ........................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agostini v. Felton,*
   521 U.S. 203 (1997) ................................................................. 6, 8, 13

*Anderson v. Central Point School Dist. No. 6,*
   746 F.2d 505 (9th Cir. 1984) ................................................... 13

*D.C. v. Heller,*
   554 U.S. 570 (2008) ................................................................. 5, 9

*Engel v. Vitale,*
   370 U.S. 421 (1962) ................................................................. 4, 7

*Freedom from Religion Found., Inc. v. Chino Valley Unified School Dist. Bd. of
Educ.,* 896 F.3d 1132 (9th Cir. 2018) ........................................... 4, 5, 8

*Freedom from Religion Found., Inc. v. Chino Valley Unified School Dist. Bd. of
Educ.,* 910 F.3d 1297 (9th Cir. 2018) ........................................... 8

*Kennedy v. Bremerton School District,*
   597 U.S. 507 (2022) ................................................................. 5, 9, 13

*Kyllo v. United States,*
   533 U.S. 27 (2001) ................................................................... 5, 9

*Lee v. Weisman,*
   505 U.S. 577 (1992) ................................................................. 10, 11

*Lynch v. Donnelly,*
   465 U.S. 668 (1984) ................................................................. 4, 6

*Marsh v. Chambers,*
   463 U.S. 783 (1983) ................................................................. 4

*New York State Rifle & Pistol Ass'n v. Bruen,*
   597 U.S. 1 (2022) ..................................................................... 5, 9, 10

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ...........................................................................11

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ...........................................................................11

*Santa Fe Independent School Dist. v. Doe*,
   530 U.S., 290 (2000) .....................................................................10, 12

*South Dakota v. Wayfair, Inc*,
   585 U.S. 162 (2018) .........................................................................5, 9

*System Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*,
   364 U.S. 642 (1961) ...........................................................................13

*Town of Greece v. Galloway*,
   572 U.S. 565 (2014) ...................................................................9, 10, 11

*Wallace v. Jaffree*,
   472 U.S. 38 (1985) .........................................................................4, 6, 7

Statutes

2 U.S.C. § 4901...................................................................................11

## I.    INTRODUCTION

*Almighty, as we deal with educating the future minds of America and the world, we
ask for your inspiration and guidance. Amen."*

This prayer, while simple and to the point, is prohibited by the permanent injunction issued in this case on February 18, 2016 ("Order" or "Injunction"). The Order enjoined the Chino Valley Unified School Board members "in their official representative capacities ... from conducting, permitting or otherwise endorsing school-sponsored prayer in Board meetings." *Freedom from Religion Found., Inc. v. Chino Valley Unified School Dist. Bd. of Educ.* (*Chino I*), 896 F.3d 1132, 1142-43, 1141 (9th Cir. 2018).

Prayer is not categorically prohibited speech in America. To the contrary, there is a rich history and tradition in America of public meetings being opened with prayer. Prayers throughout our history have opened up congressional sessions, state legislative sessions, municipal government meetings, court proceedings, school board meetings, in addition to a myriad of other types of meetings.[1]

---

[1] *See Lynch v. Donnelly*, 465 U.S. 668 (1984); *Wallace v. Jaffree,* 472 U.S. 38, 103 (1985) (Rehnquist J., dissenting); *Engel v. Vitale*, 370 U.S. 421, 446–450 (1962) (Stewart, J., dissenting); *Marsh v. Chambers*, 463 U.S. 783 (1983); 1 J. Richardson, Messages and Papers of the Presidents, 1789–1897, p. 64 (1897); 1 C. Warren, The Supreme Court in United States History 469 (1922); Evan Lee, *School Board Prayer: Reconciling the Legislative Prayer Exception and School Prayer Jurisprudence*, 54 Akron L. Rev. 75, 99 (citing Second Annual Report Of The Controllers Of The Public Schools Of The First School District Of The State Of Pennsylvania 7 (1820)); Proceedings Of The Board Of Regents Of Normal Schools And The Regulations Adopted At Their First Meeting Held At Madison, July 15, 1857 6 (1857).); Journal Of The Board Of Education Of The State Of Iowa, At Its Second Session, December, A.D. 1859 5 (1860); *see also* Marie Wicks, *Prayer Is Prologue: the Impact of* Town of Greece *on the Constitutionality of Deliberative Body Prayer at the Start of School Board Meetings*, 31 J.L. & Pol. 1, 30-31 (2015).

The Defendant School Board members[2] are asking this Court for relief from the Order as the law upon which it was premised has changed. The Court, in issuing the permanent injunction, applied the *Lemon* test. *See Chino I*, 896 F.3d at 1148 ("Instead of the legislative-prayer analysis, we apply the three-pronged Establishment Clause test articulated in *Lemon v. Kurtzman*. The Chino Valley Board's prayer policy and practice fails the *Lemon* test and is therefore unconstitutional.")(citations omitted).

Concerning a historical test, the Ninth Circuit said, "[*Marsh's*] historical approach is not useful in determining the proper roles of church and state in public schools … [and we] decline to apply the *Marsh-Greece* historical framework for legislative prayer to an institution essentially unknown to the Framers—a public-school board." *Id*. at 1148.

But in *Kennedy v. Bremerton School District*, 597 U.S. 507, 535 (2022), the Supreme Court made it crystal clear that the *Lemon* test was no longer good law, and replaced it with a historical test. The historical test is not a limited test that only inquires whether the challenged practice qualifies as a legislative prayer. To the contrary, the historical test applies beyond the legislative prayer context and is meant to guide the court in determining if the challenged practice is the type of activity that the framers intended to prohibit when they ratified the constitution.[3]

Applying the historical test counsels in favor of giving the Defendants relief from the Order. First, permitting school board prayer is consistent with the historical practices in the United States when the First Amendment was ratified as well as the Fourteenth Amendment. Second, the presence of children at School Board meetings

---

[2] The Chino Valley Unified School Board was dismissed as a defendant in this case.
[3] *See, e.g., Kyllo v. United States*, 533 U.S. 27 (2001); *South Dakota v. Wayfair, Inc*, 585 U.S. 162 (2018); *D.C. v. Heller*, 554 U.S. 570 (2008); *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

is irrelevant as the mere exposure to prayers is not an establishment clause violation, as evidenced by the fact that children regularly attend congressional sessions and town board meetings where prayers are given. And third, if the Court had any problem or concern with the prayers offered over ten years ago in this matter, those concerns are alleviated by the School Board's non-proselytizing policy that has since been enacted and the passage of over ten years.

Finally, Plaintiffs' arguments that a Rule 60 motion is not the proper vehicle for this type of relief is incorrect. In fact, it was this precise rule that was used in *Agostini v. Felton*, where the petitioners obtained relief from an injunction based on the Establishment Clause. *See* 521 U.S. 203, 218, 237 (1997) (deciding that Establishment Clause law had significantly changed warranting petitioners' relief under Rule 60(b)(5)).

## II.    THE HISTORY OF SCHOOL BOARD PRAYER IN AMERICA

### A.    The History Of Prayer Before Public Meetings

The history surrounding the ratification of the First Amendment and the Fourteenth Amendment shows that prayer before public meetings was not an unconstitutional establishment of religion. The First Congress employed congressional Chaplains to offer daily prayers in the Congress. *Lynch*, 465 U.S. 674. Through the 18th and 19th century, Congress regularly appropriated public money to religious organizations to provide education to Indian children. *Wallace v. Jaffree*, 472 U.S. 38, 103 (1985) (Rehnquist J., dissenting). In 1789 President Washington issued a proclamation following a Joint Resolution from Congress that the President "recommend to the people of the United States a day of public thanksgiving and prayer, to be observed by acknowledging with grateful hearts the many and signal

favors of Almighty God." *Jaffree*, 472 U.S. at 102 (Rehnquist J., dissenting). Since the time of John Marshall, the Supreme Court has begun each session by invoking the protection of God, with the traditional cry which ends, "God save the United States and this Honorable Court!" *Engel v. Vitale*, 370 U.S. 421, 446–450 (1962) (Stewart, J., dissenting).

History demonstrates that, since the inception of school boards, many began their meetings in prayer. In Pennsylvania, public school board meetings included clergy-led opening prayer from as early as 1820.[4] In 1857, school boards in Wisconsin opened in prayer.[5] Likewise, as early as 1859, school boards in Iowa began meetings with invocations.[6]

Simply put, there is nothing in the history to suggest otherwise – that prayers before school board meetings were viewed as an unconstitutional establishment of religion. All available historical data points to the opposite conclusion – that prayers

---

[4] Evan Lee, *School Board Prayer: Reconciling the Legislative Prayer Exception and School Prayer Jurisprudence*, 54 Akron L. Rev. 75, 99 (citing Second Annual Report Of The Controllers Of The Public Schools Of The First School District Of The State Of Pennsylvania 7 (1820)).

[5] *Id*. (citing Proceedings Of The Board Of Regents Of Normal Schools And The Regulations Adopted At Their First Meeting Held At Madison, July 15, 1857 6 (1857).)

[6] *Id*. (citing Journal Of The Board Of Education Of The State Of Iowa, At Its Second Session, December, A.D. 1859 5 (1860); *see also* Marie Wicks, *Prayer Is Prologue: the Impact of* Town of Greece *on the Constitutionality of Deliberative Body Prayer at the Start of School Board Meetings*, 31 J.L. & Pol. 1, 30-31 (2015).

to open up public meetings were accepted as standard practice and not a constitutional violation.

### B.    The Order Was Premised On The *Lemon* Test, Not A Historical Test

Most critically, this Court, and the Ninth Circuit, explicitly applied the *Lemon* test in issuing the Order. *See Chino I*, 896 F.3d at 1142-43. The Ninth Circuit Court upheld the Order because the "Chino Valley Board's prayer policy lacks a secular legislative purpose and therefore, under *Lemon*, violates the Establishment Clause." *Chino* I, 896 F.3d at 1149. The Ninth Circuit also expressly stated that a historical analysis would be impossible because school boards did not exist at the time of the founding. *Id*. at 1148.

The case was denied en banc review. However Senior Judge, Judge O'Scannlain issued an order respecting the denial of rehearing, stating the panel had "failed to faithfully apply *Town of Greece* and *Marsh*, and because such error has now created a circuit split." *Freedom from Religion Found., Inc. v. Chino Valley Unified School Dist. Bd. of Educ.* (*Chino II*), 910 F.3d 1297, 1304, 1306 (9th Cir. 2018) (O'Scannlain, J., respecting the denial of rehearing en banc). Several judges further dissented from the denial of rehearing stating that the panel wrongly applied the *Lemon* test. *Id*. at 307 (Nelson, J., dissenting from denial of rehearing en banc and stating that Lemon was "problematic" and "[b]ecause of its numerous shortcomings, *Lemon* has been criticized by members of the Supreme Court and others.")

The Supreme Court now has officially abandoned the *Lemon* test. *See Kennedy v. Bremerton School District*, 597 U.S. 507, 535 (2022). Instead, the proper test is a historical test. A proper application of the historical test, however, does not require for the challenged practice to have a direct analogue in history. Rather, the historical test is meant to illuminate what the Founder's understood the Establishment Clause to mean. *Town of Greece*, 572 U.S. 565 (2014); *see also Kyllo v. United States*, 533 U.S. 27 (2001).

This concept is not new. The Court's ruling in *Bremerton* is simply its latest in a series of opinions requiring courts to look to history rather than applying rote tests. *See Kyllo v. United States*, 533 U.S. 27 (2001) (determining whether the use of a thermal-imaging device from the street constitutes a search under the Fourth Amendment despite no such technology at the time of the founding); *South Dakota v. Wayfair, Inc*, 585 U.S. 162 (2018) (determining how to tax internet commerce under the Commerce Clause); *D.C. v. Heller*, 554 U.S. 570 (2008) (determining whether a ban on handguns in the home for self-defense violated the Second Amendment.); *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 (2022) (stating the proper test must consider if a law or regulation violated the text of the Constitution "as informed by history.").

A proper historical analysis focuses on understanding the scope of the right at the time of the founding in 1776 and around the time of the passage of the Fourteenth Amendment in 1868. As the Court noted in *New York State Rifle & Pistol Ass'n, Inc.*

*v. Bruen,* 597 U.S. 1, 20 (2022), consideration of the history post-ratification is also relevant to how the text was understood immediately following its application to the states through the Fourteenth Amendment. *Id.* at 35 ("examination of a variety of legal and other sources to determine the public understanding of a legal text in the period after its enactment or ratification was 'a critical tool of constitutional interpretation'"). Consideration of the ratification period is especially relevant in the present matter because school boards did exist at this time.

### C.     Mere Exposure To Prayer Is Not An Establishment Clause Violation

Plaintiffs' arguments to the contrary are premised on the idea that mere exposure to prayer is an Establishment Clause violation. This is not the law. In *Galloway v. Greece*, the Supreme Court rejected this argument. *See* 572 U.S. 565, 590 (rejecting claim that exposure to offending prayer was coercive in and of itself).

The Court said,

> Ceremonial prayer is but a recognition that, since this Nation was founded and until the present day, many Americans deem that their own existence must be understood by precepts far beyond the authority of government to alter or define and that willing participation in civic affairs can be consistent with a brief acknowledgment of their belief in a higher power, always with due respect for those who adhere to other beliefs. The prayer in this case has a permissible ceremonial purpose. It is not an unconstitutional establishment of religion.

*Id.* at 591.

Plaintiffs cite to *Lee v. Weisman,* 505 U.S. 577 (1992) and *Santa Fe Independent School Dist. v. Doe,* 530 U.S., 290, 312 (2000) to argue that school board prayers are different because students might be present. But children were present

during congressional prayers upheld in *Marsh v. Chambers* and *Galloway v. Greece*. *See Town of Greece v. Galloway*, 572 U.S. at 565 (Kagan, dissenting) (noting that among the audience hearing the prayers were "A few may be children or teenagers, present to receive an award or fulfill a high school civics requirement."); *see also* 2 U.S.C. § 4901 *et seq.* (congressional page program) (this Court should take judicial notice that students often appear as pages during sessions of the U.S. Congress).

The mere presence of children does not negate the practice. Even if Plaintiffs could imagine a doomsday scenario where an individual might abuse the prayer opportunity, such a hypothetical would not justify a blanket permanent injunction against religious speech solemnizing a public meeting. *See Reed v. Town of Gilbert*, 576 U.S. 155 (2015) (content-based speech restrictions must pass strict scrutiny and be narrowly tailored); *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819 (1995) (viewpoint-based speech restrictions must be narrowly tailored).

There is nothing inherent in school board meetings that makes religious speech *carte blanche* impermissible. They are routinely done after the school day, meaning if any young kids were in attendance, they would be there with their parents. School board meetings are not "one in a lifetime" type of events like high school graduations. And in any event, if a parent of a student or a student found such practice to be offensive, they could ask for an accommodation. *See Galloway,* 572 U.S. at 590 (noting that the circumstances the Court confronted in *Lee* were not present in *Galloway*. "Nothing in the record suggests that members of the public are dissuaded

from leaving the meeting room during the prayer, arriving late, or even, as happened here, making a later protest. In this case, as in *Marsh,* board members and constituents are "free to enter and leave with little comment and for any number of reasons.")

In addition, *Santa Fe* is distinguishable as that case involved a policy where students gave the opening invocation before football games. The Court found in that context; the prayers were coercive to student attendance and participation. *See Santa Fe*, 530 U.S. at 310-11. But here, the prayers are not student initiated, or student led.

## III.    SCHOOL BOARD'S ANTI-PROSELYTIZING POLICY WOULD PROHIBIT THE PRAYER OPPORTUNITY FROM BEING EXPLOITED.

Plaintiffs cited some prayers by school board members as evidence that some of the prayer opportunities were exploited. But this argument in inapposite to the current situation as over ten years have passed since the facts giving rise to the complaint occurred, and in the interim, the School Board adopted a new anti-proselytizing policy. *See*, *e.g.,* Complaint, Dkt. No. 1 ¶ 107 (filed Nov. 13, 2014). The Ninth Circuit took judicial notice that on November 3, 2016, the Board adopted Policy 9010.5 prohibiting board members from proselytizing. This policy states as follows:

Bylaws of the Board BB 9010.5
PUBLIC STATEMENTS REGARDING RELIGION OR NON-RELIGION
As the elected legislative body of the Chino Valley Unified School District; the Board of Education recognizes that the First Amendment to the United States Constitution guarantees each person's individual right to free exercise of religion or non-religion and prevents the government and other public officials from establishing a religion or non-religion.

    1. During the public portion of the Board meeting, Board members may discuss religion or religious perspectives to the extent that they are germane to agenda items or public comments.

    2. When acting in their official capacities and when speaking on behalf of the District, Board members shall not proselytize and shall be neutral towards religion and/or non-religion.

(Exhibit 3 to Defendants' Motion)

So any prayers by School Board members that would abuse the prayer opportunity by proselytizing would not be permitted.

## IV.    A RULE 60 MOTION IS THE PROPER RULE FOR THIS RELIEF

A Rule 60 motion is the proper vehicle to obtain relief in this matter. Federal Rule of Civil Procedure Rule 60(b)(5) allows the Court to relieve a party from a final injunction when it was based on a standard that has been reversed or where circumstances have changed such that it is no longer equitable. *See also* Anderson v. Central Point School Dist. No. 6, 746 F.2d 505, 507 (9th Cir. 1984); System Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright, 364 U.S. 642 (1961). If a court's order relied on Establishment Clause precedent which has been eroded by subsequent cases, relief under Rule 60 is appropriate. *Agostini v. Felton*, 521 U.S. 203, 218, 237 (1997) (deciding that Establishment Clause law had significantly changed warranting petitioners' relief under Rule 60(b)(5).)

Plaintiffs argue that relief under Rule 60 should not be granted as three years elapsed between the time of the *Bremerton* decision and the filing of this motion. This is a red herring. Plaintiffs were not unduly prejudiced by the time it took for the School Board members to digest the opinion, seek legal counsel, determine what route they

wanted to take, all while engaging in other School Board matters. Plaintiffs alleged they had to get new counsel. Getting new counsel is not an aberration in legal matters. If Plaintiffs needed additional time to get new counsel and consider the matter, Defendants would have gladly given them an extension of time. In fact, the parties did meet, and the agreed upon date for this hearing took into account the Plaintiffs' needs to fully consider this motion.

And in any event, the Order that Defendants are seeking relief from is a permanent injunction. It would seem unduly punitive to force the School Board to be subject to a parament injunction when the law upon which it was based has changed.

## CONCLUSION

This Court should vacate the injunction in the present matter and permit the new Chino Valley Board to create a policy that permits an invocation to be done prior to board meetings in a manner that comports with current law.

DATED:  September 22, 2025        ADVOCATES FOR FAITH AND FREEDOM


By:
                                            /s/ Joel Oster
                                            Joel Oster, Esq.
                                            Attorneys for Defendants