UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 14-2336 JGB (DTBx)** | Date | October 10, 2025 |
|---|---|---|---|
| Title | ***Freedom From Religion Foundation, Inc., et al. v. Chino Valley Unified School District Board of Education, et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Defendants' Motion for Relief from February 18, 2016, Order Under Fed. R. Civ. P. 60 (Dkt. No. 126); and (2) VACATING the October 20, 2025 Hearing (IN CHAMBERS)

On July 31, 2025, defendants Chino Valley Unified School District Board of Education, and Chino Valley School Board of Education Board Members James Na, Sonja Shaw, Jonathan Monroe, Andrew Cruz, and John Cervantes (collectively, "Defendants") filed a motion for relief from February 18, 2016 order under Fed. R. Civ. P. 60. ("Motion," Dkt. No. 126.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion. The Court **VACATES** the October 20, 2025 hearing.

## I. BACKGROUND

On November 13, 2014, plaintiffs Freedom From Religion Foundation, Inc. and Does 1-4 filed this action against Defendants Board of Education, and James Na, Sylvia Orozco, Charles Dickie, Andrew Cruz, and Irene Hernandez-Blair, members of the Board of Education in their official representative capacities, alleging that Defendants violated the Establishment Clause of the First Amendment by instituting a policy and practice of prayer in the Chino Valley District's school board meetings. Plaintiffs sought a declaratory judgment that Defendants' conduct of prayers, Bible readings, and proselytizing at Board meetings violates Plaintiffs' rights under the federal and California constitutions, a permanent injunction enjoining the Board and its members

from continuing to violate Plaintiffs' constitutional rights, and nominal damages for past constitutional violations.

On February 18, 2016, the Court granted in part Plaintiffs' motion for summary judgment. ("Order," Dkt. No. 87.) Specifically, the Court held that Plaintiffs were entitled to judgment against Defendants presently on the Board, James Na, Sylvia Orozco, Andrew Cruz, and Irene Hernandez-Blair, declaring that the Resolution permitting religious prayer in Board meetings, and the policy and custom of reciting prayers, Bible readings, and proselytizing at Board meetings, constitute unconstitutional government endorsements of religion in violation of Plaintiffs' First Amendment rights. (Id. at 26.) The Court further found that Plaintiffs were entitled to injunctive relief against the Board members in their individual representative capacities, and enjoined the Board members from conducting, permitting or otherwise endorsing school-sponsored prayer in Board meetings. (Id. at 25-26.)

On March 16, 2016, Defendants appealed the summary judgment order and judgment. (Dkt. No. 94.) On July 25, 2018, the Ninth Circuit Court of Appeals issued its opinion affirming the Order. ("Opinion," Dkt. No. 110.) The Ninth Circuit issued its mandate on January 3, 2019. (Dkt. No. 113.)

On July 31, 2025, Defendants filed this Motion. (Motion.) On September 15, 2025, plaintiffs Freedom From Religion Foundation, Michael Anderson, Larry Maldonado, and Does 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 16, 17, and 18 (collectively, "Plaintiffs") filed an opposition. ("Opposition," Dkt. No. 137.) In support of the Opposition, Plaintiffs filed the Declaration of Christopher Line. ("Line Decl.," Dkt. No. 137-1.) On September 22, 2025, Defendants filed a reply. ("Reply," Dkt. No. 139.)

## II.  LEGAL STANDARD

Once judgment has been entered, reconsideration may be sought by filing a motion under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Federal Rule of Civil Procedure 60(b) (motion for relief from judgment). See Hinton v. Pac. Enter., 5 F.3d 391, 395 (9th Cir. 1993). Rule 60(b)[1] provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances. Engleson v. Burlington N.R. Co., 972 F.2d 1038, 1044 (9th Cir. 1994) (citing Ben Sager Chem. Int'l v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977). Under Rule 60(b), the court may grant reconsideration based on: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) the judgment being void; (5) the judgment being satisfied, released, or discharged; or (6) any other reason justifying relief.

## III. DISCUSSION

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Defendants argue that the Court should grant relief from the Order pursuant to Rule 60(b)(5) because the legal basis underpinning this Court's Order and the Ninth Circuit's Opinion was overruled by the Supreme Court's decision in Kennedy v. Bremerton School District, 597 U.S. 507, 535 (2022). (Motion at 2.) The Court finds that Defendants have not articulated a sufficient basis for relief under Rule 60(b)(5).[2]

### A. Reasonable Time

Plaintiffs argue that Defendants did not file the Motion within a "reasonable time." (Opp. at 16.) In support, Plaintiffs contend that they have an interest in the finality of this Court's judgement, Defendants provided no reason for the three-year delay between Kennedy and the filing of this Motion, and that this delay prejudiced Plaintiffs. (Opp. at 17-20.)

A court should modify an injunction under Rule 60(b)(5) "once the legal basis for an injunction has been removed, such that the law now permits what was previously forbidden." California by & through Becerra v. U.S. Env't Prot. Agency, 978 F.3d 708, 717 (9th Cir. 2020). In considering a Rule 60(b)(5) motion, a court should first determine whether the motion was brought within a "reasonable time" as determined by the facts of the case. United States v. Holtzman, 762 F.2d 720, 725 (9th Cir. 1985). Courts take into consideration "the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981). Finally, courts should apply "leniency when the challenged judgment is prospective." United States v. Holtzman, 762 F.2d 720, 725 (9th Cir. 1985).

First, Defendants waited over three years after Kennedy to file this Motion. (Opp. at 16.) Defendants provide no reason, let alone "exceptional circumstances," to justify this three-year delay. Defendants likely knew of Kennedy when it was published on June 27, 2022 because of the intense media coverage surrounding the decision.[3] Defendants' definitely knew of Kennedy just a few weeks later when Plaintiffs' counsel sent a letter to Defendants' counsel on July 13, 2022

---

[2] Defendant Chino Valley Unified School District Board of Education does not have standing as the Court previously dismissed it from the case. (Order at 13.)

[3] See, e.g., Adam Liptak, *Supreme Court Sides With Coach Over Prayers at the 50-Yard Line*, N.Y. Times (June 27, 2022), https://www.nytimes.com/2022/06/27/us/politics/supreme-court-coach-prayers.html; Ariane de Vogue, *Supreme Court further erodes separation between church and state in case of praying football coach*, CNN (June 27, 2022), https://www.cnn.com/2022/06/27/politics/football-coach-prayer-high-school-supreme-court-kennedy; Jess Bravin, *Supreme Court Says High School Coach Can Pray on Field*, Wall St. J. (June 27, 2022), https://www.wsj.com/us-news/law/supreme-court-says-high-school-football-coach-can-pray-at-50-yard-line-11656339266?gaa_at=eafs&gaa_n=ASWzDAhLVyX9GlfohYJIeWLBcihiJu2F_WrK7F3SjtMwryMPwTDed8O4zEWpx-pKOM8%3D&gaa_ts=68de3c3a&gaa_sig=VdUTDYnFhV6nfzWvZ4MnZ9eKtECgU29B5J8-GQX_vG57PwovGBfrHTG5eKqz--27WcQmGoUOprslWcnFfY6tgA%3D%3D.

informing them that <u>Kennedy</u> did not effect the Order in this case. (Opp. at 19.; Line Decl. ¶ 3.) Plaintiffs drafted the letter in response to comments made by Defendant Andrew Cruz questioning the validity of this Court's Order in light of <u>Kennedy</u>. (Opp. at 19; Line Decl., Ex. A.) Defendants' counsel responded on July 21, 2022 and informed Plaintiffs that Defendants were advised of their "ongoing obligations under the existing injunction." (Opp. at 19; Line Decl., Ex. B). Defendants were aware of the <u>Kennedy</u> decision, on which basis they bring this Motion, and inexplicably waited three years prior to filing this Motion.

Second, this delay prejudiced Plaintiffs. Although Plaintiffs' original counsel continued to represent Plaintiffs in 2022 when <u>Kennedy</u> was decided, the three-year delay in filing this Motion forced Plaintiffs to find new counsel. (Opp. at 20.) This increased Plaintiffs' costs as new counsel had to familiarize themselves with this long-running case. (<u>Id.</u>) Although finding new counsel may not be an "aberration" (Reply at 14), it did prejudice Plaintiffs.

Third, the main purpose behind requiring "exceptional circumstances" in granting a Rule 60(b)(5) motion is to preserve the "finality of judgements." <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 535 (2005) (citing <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 873 (1988) (Rehnquist, C.J., dissenting)). The Court must evaluate "the parties' 'abstract interest in finality' and any action each party took in reliance on the judgment. <u>Bynoe v. Baca</u>, 966 F.3d 972, 985 (9th Cir. 2020) (citing <u>Henson v. Fid. Nat'l Fin., Inc.</u>, 943 F.3d 434, 450 (9th Cir. 2019)). Plaintiffs argue that they have a "strong" abstract interest in finality due to the length of the prior litigation, five years, in order to "vindicate" their constitutional rights. (Opp. at 17.) They further argue that they also have a "strong" reliance interest in finality as evidenced by their decision to end retention of their former counsel. (Opp. at 18.) Defendants do not contest Plaintiffs interests in finality. (<u>See</u> Reply.)

Accordingly, the Court finds that Defendants' Rule 60(b)(5) was not brought within a "reasonable time." <u>Holtzman</u>, 762 F.2d at 725.

### B. Establishment Clause

Even if the Court found that Defendants brought the Motion within a reasonable time, the Court is not persuaded that <u>Kennedy</u> represents a "significant change[] in the law." (Mot. at 11.) Defendants argue that the Order and the Opinion both relied on <u>Lemon</u>, which the Supreme Court overturned in <u>Kennedy</u>. (Mot. at 8, 12.) Instead of the <u>Lemon</u> test, the Court imposed a new analysis of the Establishment Clause "by reference to historical practices and understanding." (Mot. at 13 (citing <u>Kennedy</u>, 597 U.S. at 535).) Under this new analysis, the injunction cannot stand because historically "invocations and prayers before public meetings were commonplace." (Mot. at 14.) However, <u>Kennedy</u>, while overturning <u>Lemon</u>, does not undermine the validity of either the Order or the Opinion.

In <u>Kennedy</u>, appellant Joseph Kennedy, a high school football coach, lost his job after kneeling at the 50-yard line "to offer a quiet prayer of thanks" following the conclusion of games. <u>Kennedy</u>, 597 U.S. at 512. He sued the Bremerton School District alleging violations of the Free

Exercise and Free Speech Clauses of the First Amendment. Id. at 520. The Court held that appellant's "brief, quiet, personal religious observance" is "doubly protected by the Free Exercise and Free Speech Clauses of the First Amendment." Id. at 543. In reviewing the role of the Establishment Clause vis-à-vis the Free Exercise and Free Speech Clauses, the Court overruled the Lemon test. Id. at 534. The Lemon test asked Courts to determine whether a law accused of violating the Establishment Clause has a "secular legislative purpose," whether its "primary effect . . . advances []or inhibits religion," and whether the law fosters "an excessive government entanglement with religion." Lemon v. Kurtzman, 403 U.S. 602, 612 (1971) (internal citations omitted). Instead of the Lemon test, the Supreme Court held that courts should interpret the Establishment Clause by referencing "historical practices and understandings." Kennedy, 597 U.S. at 535 (citing Town of Greece, 572 U.S. 565, 576 (2014)). Subsequently, the Court turned to Bremerton School District's argument that the Establishment Clause required it to suppress Mr. Kennedy's prayers to avoid "coercing students to pray." Id. at 536. The Supreme Court rejected this argument. "[T]his Court has long held that government may not, consistent with a historically sensitive understanding of the Establishment Clause, 'make a religious observance compulsory.'" Id. at 536-37 (citing Zorach v. Clauson, 343 U.S. 306, 314 (1952)). The Court distinguished Mr. Kennedy's private prayers from its line of Establishment Clause cases finding "prayer involving public school students to be problematically coercive" because his prayers were not "publicly broadcast or recited to a captive audience" and because he did not require or expect students to participate. Id. at 541-42. Thus, there existed no conflict between Mr. Kennedy's rights under the Free Exercise and Free Speech Clauses and Bremerton School District's obligations under the Establishment Clause. Id. at 542.

Defendants' argument that Lemon's demise warrants relief from the injunction misses the forest for the trees. This Court's Order provided an extensive background on the Establishment Clause and, specifically, cases related to school prayer. (Order at 13-17.) These include cases like Lee v. Weisman, 505 U.S. 577 (1992) and Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000), which the Supreme Court cited favorably in Kennedy. Compare Order at 15-16 with Kennedy, 597 U.S. at 541-42. The Order next determined that the legislative exception allowing for prayer in legislative sessions did not apply to the Chino Valley School Board meetings "[b]ecause of the distinct risk of coercing students to participate in, or at least acquiesce to, religious exercises in the public school context." (Order at 23.) In its analysis of the legislative exception, the Order reviewed Town of Greece, 572 U.S. 565 (2014), where the Supreme Court first developed its "historical practices and understandings test" in the context of the Establishment Clause. (Order at 22.) This Court held that "Town of Greece left the school prayer cases . . . undisturbed."[4] (Id.) Finally, the Court turned to the Lemon test and, in doing

---

[4] The Supreme Court also distinguished Lee v. Weisman, 505 U.S. 577 (1992) and Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000) from its holding in Town of Greece that the town of Greece did not "through the act of offering a brief, solemn, and respectful prayer to open its monthly meetings, compel[] its citizens to engage in a religious observance." Town of Greece, N.Y. v. Galloway, 572 U.S. 565, 587 (2014). Lee and Santa Fe Indep. Sch. Dist. were (continued . . . )

so, focused on the coercive nature of the Defendants's prayer policy, finding that board members made "overtly religious, proselytizing statements" and that "the primary effect of the Board's Resolution and statements is to promote Christianity." (Id. at 24-25.) The Court concluded that the Defendants brought "sectarian prayer and proselytization into public schools through the backdoor." (Id. at 25.) Thus, even though this Court relied on Lemon, it correctly focused on the coercive nature of Defendants' prayer policy. Nothing in Kennedy persuades this Court that the Supreme Court intended to overrule its line of school prayer cases banning "prayer involving public school students" that is "problematically coercive." See Kennedy, 597 U.S. at 541-42.

To the extent that Defendants try and argue that an analysis of history should change the outcome, Kennedy already controls this Court's historical analysis. (Mot. at 13-20.) The Supreme Court noted that it "has long held that government may not, consistent with a *historically sensitive understanding* of the Establishment Clause, 'make a religious observance compulsory.'" Kennedy, 59 U.S. at 536-37 (emphasis added) (citing Zorach v. Clauson, 343 U.S. 306, 314 (1952)). The Court further argued that "forc[ing] citizens to engage in 'a formal religious exercise' . . . was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." Id., 597 U.S. at 537. As a result, the Supreme Court distinguished the issue in Kennedy, "the prayer he gave alone," from Mr. Kennedy's previous efforts to engage in prayer while presenting locker-room speeches to students and practice of "postgame religious talks" with his football team which he had voluntarily ended. Id. at 538. Mr. Kennedy's quiet prayer alone differs dramatically from the practice in this case, where Defendants began board meetings with a prayer, board members recited bible passages and made religious comments, and where students regularly attended meetings. (Order at 7-9.)

The Ninth Circuit Opinion affirmed this Court's Order on nearly identical grounds. The Ninth Circuit founds that Defendants' prayer policy and practice violate the Establishment clause because they "typically take place before groups of schoolchildren whose attendance is not truly voluntary and whose relationship to school district officials, including the Board, is not one of full parity." (Opinion at 16-17.) The Ninth Circuit also evaluated the "historical practices and understandings" test in Town of Greece. (Id. at 20.) It distinguished Town of Greece because "the practice of prayer at Chino Valley Board meetings does not "fit[] within the tradition long followed in Congress and the state legislatures." (Id. at 20-21 (citing Town of Greece, 572 U.S. at 577).) Thus, the Ninth Circuit similarly held that the legislative exception did not apply. (Id. at 21.) Finally, the Ninth Circuit turned to Lemon, where it also focused on the coercive nature of Defendants' prayer policy and practice. (Id. at 28-33.) The Ninth Circuit noted that Defendants' goal was "the furtherance of Christianity," that Defendants' policy "reinforce[d] the dominance of particular religious traditions," and that Defendants' prayers "frequently advanced religion in general and Christianity in particular." (Id. at 32-33.) For the same reasons

---

distinguishable because "a religious invocation" in a public-school setting is "coercive" vis-à-vis students. Id. at 590.

discussed above with regards to this Court's Order, Kennedy does not overrule the Ninth Circuit's opinion.

     Finally, Defendants rely on Agostini v. Felton, 521 U.S. 203 (1997) for the proposition that Rule 60 relief is appropriate where "a decision or order relied on Establishment Clause precedent which has been eroded by subsequent cases." (Mot. at 11.). There, the Supreme Court reversed the judgements of the District Court and the Second Circuit implementing a previous Supreme Court decision where Establishment Clause cases in the interim had undermined, but not explicitly overruled, previous Supreme Court precedent. Agostini v. Felton, 521 U.S. 203, 236 (1997). Although the Supreme Court reversed the judgement of the lower courts, it did not provide lowers courts permission to "conclude our more recent cases have, by implication, overruled an earlier precedent." Id. at 237. The Court lauded the trial court for recognizing that the Rule 60(b)(5) motion "had to be denied unless and until this Court reinterpreted the binding precedent." Id. at 238; see also Nat'l Institutes of Health v. Am. Pub. Health Ass'n, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring in part and dissenting in part) ("Lower court judges may sometimes disagree with this Court's decisions, but they are never free to defy them."). As described above, this Court is not persuaded that the Supreme Court has overturned its line of school prayer cases upon which this Court and the Ninth Circuit relied upon. Accordingly, the Court must deny the Rule 60(b)(5) motion.

## IV. CONCLUSION

For the above reasons, the Court **DENIES** Defendants' Motion. The Court **VACATES** the October 20, 2025 hearing.

     **IT IS SO ORDERED.**